**MAJOR CADILLAC, INC., Respondent,**

v.

**GENERAL MOTORS CORPORATION, Appellant.**

**No. WD 69823.**

Missouri Court of Appeals, Western District.

Feb. 17, 2009.

Application for Transfer to Supreme Court Denied March 31, 2009.

Application for Transfer Denied May 5, 2009.

Nicholas L. Divita, Kansas City, MO, for Appellant.

John M. Edgar, John F. Edgar, Michael D. Pospisil, Kansas City, MO, for Respondents.

Before: THOMAS H. NEWTON, C.J., HAROLD L. LOWENSTEIN, and VICTOR C. HOWARD, JJ.

THOMAS H. NEWTON, Chief Judge.

General Motors Corporation (GM) appeals the denial of its motion to compel arbitration. Its former dealers Major Cadillac, Inc. (Major), Main Street Chevrolet, LLC (Main Street), and their owners F. Lee Major III (F. Major), John Major (J. Major), and James Henderson sued GM for damages in circuit court. After having removed the case to federal court, GM filed a motion to dismiss in that court. Upon remand, GM filed another motion to dismiss with prejudice in the circuit court, and then filed a motion to compel arbitration based on arbitration clauses within certain agreements between the parties. The former dealers and their owners opposed the motion, arguing that the arbitration clauses were invalid and that in the alternative, if they were valid, GM waived enforcement of arbitration. The trial court denied the motion to compel arbitration without explanation. Because GM waived enforcement of the arbitration agreements, we affirm.

**Factual and Procedural Background**

The following facts were taken from the pleadings. Pursuant to GM's invitation, L. Major, J. Major, and Mr. Henderson formed Main Street, LLC to become a GM dealership that sold Chevrolet vehicles. L. Major and J. Major were already owners and operators of Major, a successful GM dealership that sold Pontiac, GMC, and Cadillac vehicles. GM supplied Main Street with Chevrolet vehicles by selling

Main Street the assets of Fisher, a former GM dealership that had sold Chevrolet and Buick vehicles. It was also agreed that Main Street would operate from the same location where the unsuccessful Fisher had operated.

GM entered into several agreements with Main Street to operate as a Chevrolet dealership including a Dealer Agreement, an Exclusive Use Agreement, and a Summary Agreement. J. Major signed the agreements on behalf of Main Street. GM also entered into several agreements with Major to expand its franchise to include Buick vehicles. The Buick vehicles that Main Street acquired from Fisher were used to supply Major with inventory. GM and Major entered into several agreements, which included an Amended Dealer Agreement, an Exclusive Use Agreement, and a Summary Agreement. L. Major signed the agreements on behalf of Major. The majority of these agreements were executed contemporaneously with exception to the Amended Dealer Agreement.

Main Street received financing from GMAC Financial Services (GMAC). For years, GMAC had a preexisting financial relationship with Major and another car dealership owned by L. Major. Main Street was not successful in selling cars and could not repay GMAC the monies that it received. According to the petitioners, Main Street failed because GM did not treat the dealership as a new franchise, but instead as a franchise with a poor sales history. After Main Street terminated as a business, GMAC and its employees asked L. Major for the money that Main Street owed. L. Major told them that Main Street did not have any funds. Following GM's orders, GMAC employees threatened to remove its financing from Major and L. Major's other dealership, if L. Major did not pay Main Street's debt. Major could not pay because it had lost an investment of $800,000 in Main Street.

Subsequently, GMAC sent a letter removing financing from Major and the other dealership. Consequently, Major also had to terminate business.

On October 22, 2007, Major, Main Street, L. Major, J. Major, and Mr. Henderson (the petitioners) sued GM for fraudulent inducement, negligent misrepresentation, tortious interference with business relationship/expectancy, violation of the Missouri Motor Vehicle Franchise Practices Act, breach of duty of good faith and fair dealing, and civil conspiracy. The petitioners sued GMAC for tortious interference with business relationship/expectancy, breach of duty of good faith and fair dealing, and civil conspiracy. They also sued GMAC employees David Rowe, Greg Flesch, and Mary Phelan for tortious interference with business relationship/expectancy and breach of duty of good faith and fair dealing.

GM and GMAC (the defendants) removed the case to the federal district court on November 19, 2007, based on diversity jurisdiction. The defendants argued that the petitioners fraudulently joined the GMAC employees, specifically Mr. Flesch, to the lawsuit to destroy diversity. According to GM and GMAC, the petitioners joined Mr. Flesch to destroy diversity because he resided in the same state as petitioners—Missouri and the defendants resided in Delaware. Thereafter, GMAC filed an answer in the federal court that included a counterclaim, and GM filed a motion to dismiss with supporting documents. The petitioners filed a motion for remand to the state court based on lack of diversity, a motion to dismiss for lack of jurisdiction, and a motion to stay all proceedings pending resolution of the motion for remand. The petitioners request for remand defended against fraudulent joinder by providing legal reasoning why Mr. Flesch could be held liable in his individual

capacity while employed by GMAC. Both parties filed suggestions in opposition to each other's motions and reply suggestions to their motions to dismiss.

On February 19, 2008, the federal court granted the petitioners' motion for remand because the claims against the GMAC employees were legitimate, thereby ruling diversity was lacking between the parties. All of the remaining motions, including GM's motion to dismiss, were denied as moot since the federal court lacked subject matter jurisdiction.

In circuit court, GM applied for a change of judge on February 27, 2008, and filed a motion for extension of time to answer the following day. Subsequently, GM filed a motion to dismiss with prejudice on March 20, 2008. On April 9, 2008, the petitioners filed suggestions in opposition to the motion to dismiss. Discovery between the parties commenced on April 10. On April 17, the circuit court ordered a case management conference for May 22. The defendants filed a reply to the petitioners' suggestions in opposition on May 2, 2008. Subsequently, on May 13, GM applied for an order to compel arbitration and motion to stay all proceedings against GM pending arbitration. GM claimed that Major and Main Street agreed to arbitrate all disputes arising out of, or relating to, the purchase of Fisher's assets when they executed the Summary Agreements because they contained arbitration clauses. GM argued that the petitioners' dispute is essentially claims against GM for events relating to the purchasing of the assets. The petitioners filed a motion in opposition of arbitration, and GM filed a reply in support of its motion to compel arbitration. On June 17, 2008, the trial court denied GM's motion to compel arbitration and to stay the proceedings. The trial court also denied GM's motion to dismiss. GM appeals the denial of its motion to compel arbitration.

## Legal Analysis

GM raises three points on appeal. In its first two points, GM argues that the trial court erred in denying the motion to compel arbitration against the *former dealers* because (1) both federal and Missouri law mandate the enforcement of valid arbitration agreements, and the former dealers' claims are within the scope of the arbitration agreements; and (2) because the former dealers' defenses of waiver and federal exemption are meritless. In its last point, (3) GM argues that the trial court erred in denying the motion to compel arbitration against the *owners* because the owners lack the individual capacity to sue, and thus their claims are derivative to the former dealers' claims, requiring that the arbitration clauses also apply to the owners' claims.

Valid arbitration clauses which affect interstate commerce must be enforced according to the Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et. seq.,* unless an exception applies. *McIntosh v. Tenet Health Sys. Hosps., Inc.,* 48 S.W.3d 85, 88 (Mo.App. E.D.2001). Both parties agree that the franchise agreements involved interstate commerce and, thus, federal law applies. *See McCarney v. Nearing, Staats, Prelogar & Jones,* 866 S.W.2d 881, 888 (Mo.App. W.D.1993) (FAA applies when the contract involves interstate commerce). To determine whether arbitration should be compelled, the circuit court must decide if a valid arbitration agreement exists and, if so, whether the disputes fit within the scope of the arbitration clause. *Kansas City Urology, P.A. v. United Healthcare Servs.,* 261 S.W.3d 7, 11 (Mo. App. W.D.2008). Whether an arbitration clause is valid is a question of law, which we review *de novo. Triarch Indus., Inc. v. Crabtree,* 158 S.W.3d 772, 774 (Mo. banc 2005). A party may waive a valid arbitration agreement. *McIntosh,* 48 S.W.3d at

89. Whether a party has waived its right to arbitrate is also reviewed *de novo. Id.*

■ GM argues that the arbitration clauses within the Summary Agreements are enforceable because they are valid arbitration agreements and the petitioners' claims are within the scope of those agreements. The petitioners contend that the arbitration clauses are not valid because the Motor Vehicle Franchise Contract Arbitration Fairness Act (the MVFCAFA), 15 U.S.C. § 1226, voids the arbitration agreements. The MVFCAFA is a federal statute that invalidates arbitration agreements between a manufacturer and a dealer entered into before a dispute arises out of or relating to a motor vehicle franchise contract. *Arciniaga v. Gen. Motors Corp.,* 460 F.3d 231, 235 (2d Cir.2006). A motor vehicle franchise contract is "a contract under which a motor vehicle manufacturer, importer, or distributor sells motor vehicles to any other person for resale to an ultimate purchaser and authorizes such other person to repair and service the manufacturer's motor vehicles." *Id.* (quoting 15 U.S.C. § 1226(a)(1)(B)).

GM argues that the MVFCAFA is not applicable because the contracts containing the arbitration clauses are not motor vehicle franchise contracts, but are summary agreements regarding the planned acquisition of assets. The former franchisees and owners argue that the Summary Agreements along with the Exclusive Use Agreements should be considered part of the Dealer Agreements, thus making MVFCAFA applicable. GM contends that the agreements should not be construed together because the Dealer Agreements that authorize Major and Main Street to operate are separate from the Summary Agreements. GM maintains that the agreements are separate because additional consideration was provided to the former dealers for the Summary Agreements and Exclusive Use Agreement. We refrain from deciding whether the three agreements should constitute a single contract because, if GM waived the right to arbitrate, the validity of the arbitration clauses is rendered moot.

■ "A party waives its right to arbitrate if it: (1) had knowledge of the existing right to arbitrate; (2) acted inconsistently with that right, and (3) prejudiced the party opposing arbitration." *Getz Recycling, Inc. v. Watts,* 71 S.W.3d 224, 229 (Mo.App. W.D.2002). As stated earlier, waiver is reviewed *de novo. Id.* at 228. A court cannot properly find a party waived its right to arbitrate without first finding prejudice to the party contesting arbitration. *Id.* at 229. There is a strong presumption against prejudice, and the party contesting arbitration has the burden to show it. *Id.*

■ The first two prongs are easily satisfied. As the petitioners assert, GM knew that the arbitration clause existed because it drafted the contract. *See id.* at 229 (finding knowledge of the right to arbitrate because the alleged waiving party drafted the agreement). GM argues that it did not know about the arbitration clauses before removing the case to federal court because its current legal counsel was unaware of it. GM is a corporation, so its knowledge is not limited to one employee or agent. *See Wandersee v. BP Prods. N. Am., Inc.,* 263 S.W.3d 623, 629–30 (Mo. banc 2008). Thus, the lack of knowledge of GM's counsel does not negate the corporation's knowledge of the arbitration clauses in the agreements it drafted. Additionally, GM acted inconsistently with a right to arbitrate when it removed the case to federal court, requested a change of circuit court judge, and filed motions to dismiss in the federal court and the circuit court.

■ As for the third element, GM argues that the petitioners have not shown

prejudice because they rely solely on the fact that GM "delayed" filing a motion to compel arbitration, which is insufficient to constitute prejudice. To the contrary, delay is only one of several reasons the petitioners claim that GM's behavior prejudiced them. In addition to delay, the petitioners claim that they were prejudiced because the parties have engaged in discovery, the petitioners have expended significant funds in responding to an improper removal of the case to federal court and briefing two motions to dismiss, and GM has asked both the federal and circuit courts to decide the merits of the case. We agree that GM's conduct prejudiced the petitioners.

■■■■■ Prejudice is determined on a case-by-case basis. *See McCarney,* 866 S.W.2d at 890. The prejudice requirement is met "when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." *Boogher v. Stifel, Nicolaus & Co.,* 825 S.W.2d 27, 30 (Mo.App. E.D.1992). " 'Prejudice may result from lost evidence, duplication of efforts, use of discovery methods unavailable in arbitration, or litigation of substantial issues going to the merits.' " *Nettleton v. Edward D. Jones & Co.,* 904 S.W.2d 409, 411 (Mo.App. E.D. 1995) (quoting *McCarney,* 866 S.W.2d at 890). As GM properly asserts, delay in the litigation itself is not adequate prejudice to support a finding of waiver. Prejudice may be found, however, when a party's time and funds are expended because that party has not received the benefit of arbitration: "efficient and low-cost resolution of disputes." *Reis v. Peabody Coal Co.,* 935 S.W.2d 625, 631 (Mo.App. E.D. 1996). Moreover, delay and trial-oriented activity are material factors in assessing prejudice. *Getz,* 71 S.W.3d at 229.

GM's removal of the case based on diversity jurisdiction required the petitioners to seek a remand to the circuit court. Because GM defended against remand on the ground of fraudulent joinder, the petitioners had to defend against fraudulent joinder, causing them to incur legal expenses and advocate the merits of the claims against the GMAC employees. If GM had filed a motion to compel arbitration earlier, they otherwise would not have expended these resources. Upon remand, GM requested a change of judge and an extension of time to file an answer, further delaying the litigation.

GM then filed a motion to dismiss the case in circuit court. In that motion, GM raised defenses to the claims, attached supporting documents, and requested dismissal with prejudice. The motion amounted to a request of adjudication on the merits. Under Rule 55.27(a)(B),[1] a party that presents matters outside the pleadings when asserting a motion to dismiss for failure to state a claim is seeking adjudication on the merits. GM argues that it was allowed to attach documents to the motion to dismiss without converting it under Rule 55.22. But Rule 55.22 allows a written instrument to be attached to a pleading when the claim or defense is founded upon it. The petitioners' claims mainly lie in tort, so the contracts provided by GM were outside the pleadings. Thus, the petitioners had to duplicate their efforts in defending both the merits and the sufficiency of their claims to provide a complete response to the motion to dismiss, which required them to incur additional expenses.

GM spent eight months litigating substantial issues going to the merits with various motions, which denied the petitioners an efficient and low-cost resolution of disputes. This conduct prejudiced the pe-

---

1. Rule references are to Missouri Rules of Civil Procedure 2008.

titioners. *See Reis,* 935 S.W.2d at 631. Therefore, GM waived any right to arbitrate, assuming, but not deciding, that the arbitration clauses apply to the petitioners' claims. Because GM waived arbitration, its remaining points are moot and will not be discussed.

### Conclusion

For the foregoing reasons, we affirm the trial court's denial of the motion to compel arbitration.

LOWENSTEIN and HOWARD, JJ. concur.