MFA, INC., Appellant,

v.

HLW BUILDERS, INC., Respondent.

No. WD 70475.

Missouri Court of Appeals,
Western District.

Feb. 23, 2010.

Theodore Kardis, for Appellant.

Christopher L. Heigele, for Respondent.

Before Division Two: JOSEPH M. ELLIS, Presiding Judge, VICTOR C. HOWARD, Judge and CYNTHIA L. MARTIN, Judge.

JOSEPH M. ELLIS, Judge.

MFA, Inc. appeals from a summary judgment entered in the Circuit Court of Callaway County in favor of HLW Builders, Inc. in an action filed by MFA to compel arbitration or, in the alternative, for breach of contract. For the following reasons, the judgment is affirmed.

On December 9, 1998, MFA entered into a contact with HLW for the construction of an agriculture chemical/fertilizer facility in Callaway County. HLW was chosen as the contractor by MFA's project coordinator, John Seiler. In order to solicit bids for the project, Seiler had created and provided contractors with drawings of the proposed facility along with certain specifications. Those drawings and specifications were incorporated by reference in the construction contract. HLW completed the construction in March 2000.

On October 25, 2002, Bradley Hamilton went to the facility to repair an elevated conveyor system on behalf of a repair contractor hired by MFA. The repairs required Hamilton to utilize the catwalk located next to the conveyor. While working on the conveyor, Hamilton had a seizure, fell to the ground, and died as a result of the injuries he sustained. OSHA investigated the incident and cited MFA with exposing employees to a twenty-four foot fall hazard because the catwalk did not have a guardrail or other fall protection system on the side closest to the conveyor belt.

On May 10, 2004, Hamilton's widow filed a wrongful death action against MFA in

the Circuit Court of Jackson County. On November 10, 2004, MFA filed a third-party petition against HLW. In its answer to MFA's third-party petition, HLW asserted that the dispute should be resolved through arbitration as provided by the arbitration clause contained in the construction contract. On January 7, 2005, HLW wrote MFA and requested that the claims be submitted to binding arbitration as provided in the construction contract.

On August 24, 2005, Hamilton's widow filed her First Amended Petition, adding HLW as a defendant. On May 10, 2006, the circuit court granted HLW's motion for summary judgment on the claims brought by Hamilton's widow based upon the acceptance doctrine. On June 6, 2006, MFA dismissed its third-party petition and demanded for the first time that the dispute between the two companies be arbitrated. HLW refused to arbitrate at that point, contending that the findings and conclusions of the summary judgment resolved the dispute between the two companies. On January 23, 2007, following mediation, MFA entered into a settlement agreement with Hamilton's widow for $1.2 million.

On February 28, 2007, MFA filed the current action in the Circuit Court of Callaway County asserting that HLW had breached the construction contract by refusing to arbitrate its claim that HLW should indemnify it for the $1.2 million paid to Hamilton's widow. In the alternative, MFA brought a breach of contract claim against HLW for failing to construct the facility in compliance with OSHA standards and claimed that breach resulted in Hamilton's death and the subsequent settlement of the wrongful death action.

HLW filed a motion for summary judgment on July 26, 2007. On September 4, 2007, MFA filed a motion for partial summary judgment and motion to compel arbitration.

Following a hearing, the trial court denied the motion to compel arbitration, finding that the arbitration clause in the contract was not mandatory. In addition, the court found that MFA had waived any right it had to arbitrate. The trial court also granted HLW's motion for summary judgment and denied MFA's motion for partial summary judgment. MFA brings three points on appeal.

In its first point, MFA claims the trial court erred in denying its motion to compel arbitration because the arbitration clause was mandatory rather than permissive. MFA also argues that the trial court erred in finding that it waived its right to arbitration.

■ "In determining whether parties are bound by an agreement to arbitrate, the court must determine whether a valid arbitration agreement exists and, if so, whether the specific dispute falls within the scope of the arbitration agreement." *Kritzer v. Curators of Univ. of Mo.*, 289 S.W.3d 727, 730 (Mo.App. W.D.2009) (internal quotation omitted). "In making these determinations, the court should apply the usual rules of state contract law and canons of contract interpretation." *Id.* (internal quotation omitted). "[A]n appellate court's review of the arbitrability of a dispute is *de novo.*" *Woods v. QC Fin. Servs., Inc.*, 280 S.W.3d 90, 94 (Mo.App. E.D.2008).

Article 15 of the General Conditions of the contract, adopted by reference in the Construction Agreement, provides:

> To prevent suits and litigations, it is agreed by the parties hereto that should any disputes arise under this Contract that cannot be otherwise peacefully agreed upon, the same may be submitted to arbitration upon the written request of either party hereto. If arbitration is chosen, the Owner and the Contractor shall each choose one

arbitrator, and they in turn shall choose a third member. Their decision shall be final, and either the Owner or Contractor shall comply.

The trial court concluded that the "may be submitted to arbitration" language rendered Article 15 permissive rather than mandatory.

▇▇▇ Contrary to the trial court's conclusion, "[t]he overwhelming authority from state and federal courts throughout the nation supports the conclusion that the use of operative language such as "may elect" does give rise to mandatory arbitration." *Discover RE Managers, Inc. v. Preferred Employers Group, Inc.*, No. 3:05CV809, 2006 U.S. Dist. LEXIS 97836, at *22–23 (D.Conn. March 8, 2006).[1] "[P]arties can always voluntarily submit a claim to arbitration; therefore, making an agreement to arbitrate only if the parties later agree to do so is a meaningless prom-

ise." *Maloney–Refaie v. Bridge at Sch., Inc.*, 958 A.2d 871, 884 (Del.Ch.2008). The use of the word "may" grants one side a right to pursue arbitration if it wished and mandatory arbitration is required when one side so requests. *Id.*

Under the arbitration language contained in the construction contract at issue here, while not all disputes must be resolved through arbitration, once any of the parties to the contract invokes the right to arbitration by written request, arbitration is mandatory unless subsequently waived by that party. Thus, we must ascertain whether, as MFA claims, the trial court improperly found that MFA had waived its right to arbitration.

▇▇▇ "A party may waive a valid arbitration agreement." *Major Cadillac, Inc. v. General Motors Corp.*, 280 S.W.3d 717, 721 (Mo.App. W.D.2009). "A party waives its right to arbitrate if it: (1) had knowl-

---

**1.** Citing *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985); *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United States v. Bankers Ins. Co.*, 245 F.3d 315 (4th Cir.2001); *New York Cross Harbor R.R. Terminal v. Consolidated Rail Corp.*, 72 F.Supp.2d 70, 76–77 (E.D.N.Y.1998) (quoting *Austin v. Owens–Brockway Glass Container, Inc.*, 78 F.3d 875 (4th Cir.1996) (agreement that "all disputes ... may be referred to arbitration" triggers mandatory arbitration); *American Italian Pasta Co. v. Austin Co.*, 914 F.2d 1103, 1104 (8th Cir.1990) (agreement which stated that "[i]f both parties agree that a dispute ... cannot be settled ... then such dispute may be submitted to arbitration" triggers mandatory arbitration); *Local 771, I.A.T.S.E., AFL–CIO v. RKO Gen. Inc., WOR Div.*, 546 F.2d 1107, 1115–16 (2d Cir.1977) (agreement that "[t]he parties may submit to arbitration triggers mandatory arbitration"); *McCrea v. Copeland, Hyman & Shackman*, 945 F.Supp. 879, 881–82 (D.Md. 1996) (agreement that "either party may petition the appropriate court ... for an order compelling submission ... to arbitration" triggers mandatory arbitration); *Chiarella v. Vetta Sports. Inc.*, No. 94CV5933, 1994 WL 557114, at *3 (S.D.N.Y. October 7, 1994) (agreement that "either party may submit the dispute to arbitration" triggers mandatory arbitration); *Lopez v. Time, Inc.*, No. 93CV5330, 1994 WL 88062 at *5 (S.D.N.Y. Mar.11, 1994) (agreement that a "grievance ... may be submitted by either party ... to an impartial arbitrator" triggers mandatory arbitration); cf. *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 204 n. 1, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) ("[t]he use of the permissive 'may' is not sufficient to overcome the presumption that parties are not free to avoid the contract's arbitration procedures"). "[I]nterpreting 'may' as giving each party the right to require arbitration (or take no action) was consistent with the well-known rule against interpreting contracts in a manner that renders a provision meaningless." *Discover RE Managers, Inc. v. Preferred Employers Group, Inc.*, No. 3:05CV809, 2006 U.S. Dist. LEXIS 97836, at *25 (D.Conn. Mar. 1, 2006) (citing *New York Cross Harbor R.R. Terminal*, 72 F.Supp.2d at 76–77)). In short, the cited cases all found that an arbitration clause containing "may" language and allowing either party to elect arbitration triggers mandatory arbitration. *Id.*

edge of the existing right to arbitrate; (2) acted inconsistently with that right, and (3) prejudiced the party opposing arbitration." *Id.* at 722 (internal quotation omitted). We review the trial court's conclusion that the right to arbitration has been waived *de novo. Id.*

MFA concedes that it had knowledge of its right to arbitrate under the contract. However, it contends that it did not act in a manner inconsistent with that right and, furthermore, that HLW was not prejudiced by its actions.

The trial court found that, even if the language were mandatory, MFA had waived any right to arbitration in the matter by filing its third-party petition against HLW without requesting arbitration and by not dismissing its claim against HLW even after HLW initially requested arbitration, thereby requiring HLW to defend the lawsuit for months. The court noted that MFA did not attempt to pursue arbitration until after HLW had prevailed in its motion for summary judgment against the plaintiff in that lawsuit and findings adverse to MFA were made in that judgment.

█ MFA undoubtedly acted inconsistently with its right to arbitrate by filing its third party action against HLW in Callaway County Circuit Court, waiting nineteen months to dismiss its action, and not notifying HLW of its intent to pursue arbitration until after HLW had prevailed in its summary judgment motion against Hamilton's widow. *See Getz Recycling, Inc. v. Watts,* 71 S.W.3d 224, 229 (Mo.App. W.D.2002). While it may have acknowledged at various points that HLW had a contractual right to pursue arbitration if it so chose, MFA's actions prior to the entry of the summary judgment are clearly indicative of its own desire to adjudicate the issues in circuit court rather than submit them to arbitration.

█ Accordingly, we turn to whether prejudice was established. "Prejudice is determined on a case-by-case basis." *Major Cadillac, Inc.,* 280 S.W.3d at 723. "Delay in seeking to compel arbitration does not itself constitute prejudice; but delay and the moving party's trial-oriented activity are material factors in assessing prejudice." *Getz Recycling, Inc.,* 71 S.W.3d at 229 (internal quotation omitted). "The prejudice requirement is met when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." *Major Cadillac, Inc.,* 280 S.W.3d at 723 (internal quotation omitted). "Prejudice may result from lost evidence, duplication of efforts, use of discovery methods unavailable in arbitration, or litigation of substantial issues going to the merits." *Id.* (internal quotation omitted).

MFA filed suit in the circuit court seeking judicial resolution of its claim against HLW on October 22, 2004. MFA first made its demand for arbitration on June 6, 2006. Thus, MFA waited nineteen months before asserting its contractual right to arbitrate, and during that time, MFA pursued a legal remedy in the circuit court. HLW was forced to incur litigation expenses defending against MFA's third party action and to participate in discovery related thereto. Prejudice was sufficiently established. *See Reis v. Peabody Coal Co.,* 935 S.W.2d 625, 631 (Mo.App. E.D. 1996) (holding that a two year delay in asserting the right to arbitrate while pursuing a case in circuit court resulted in prejudice).

█ The trial court did not err in concluding that MFA had waived its contractual right to pursue arbitration. Point denied.

█ In its second point, MFA claims that the trial court erred in granting summary judgment to HLW with regard to

MFA's claim for specific performance of the arbitration clause because a genuine dispute existed as to the material facts related to whether MFA waived its right to arbitrate. Neither MFA's point relied on nor its argument identify the facts it claims are in dispute. Indeed, MFA's argument in Point I, which MFA incorporates by reference in its argument on Point II, asserts that the facts relevant to waiver are undisputed. This claim of error has not been sufficiently developed for appellate review and is, therefore, deemed to have been waived. *Chipperfield v. Missouri Air Conservation Comm'n*, 229 S.W.3d 226, 244 (Mo.App. S.D.2007).

In its final point, MFA argues that the trial court erred in granting summary judgment in favor of HLW on MFA's breach of contract claim because the trial court misapplied the law in concluding that the acceptance doctrine was applicable under the facts of this case. MFA further contends that genuine disputes existed as to the material facts relevant to the application of the acceptance doctrine.

The trial court's judgment, however, expressed alternative grounds for granting summary judgment. In addition to concluding that summary judgment was appropriate based upon the acceptance doctrine, the trial court found, based on the uncontroverted facts, "HLW did not breach the construction contract with MFA." HLW has not challenged this alternative basis for summary judgment on appeal. Where the trial court's ruling in entering summary judgment can be sustained under any theory, it must be affirmed. *Rocha v. Metropolitan Prop. & Cas. Ins. Co.*, 14 S.W.3d 242, 245 (Mo.App. W.D.2000). Thus, we need not address MFA's claim of error because, even were we to determine that the trial court misapplied the acceptance doctrine to this case, the trial court's entry of summary judgment must be affirmed based upon its determination that, under the undisputed facts, no breach of contract occurred.

The judgment is affirmed.

All concur.