

# In the Missouri Court of Appeals

# Eastern District

### DIVISION III

| | | |
|---|---|---|
| LOVELACE FARMS, INC., et al, | ) | No. ED101069 |
| | ) | |
| Respondents, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Honorable Barbara W. Wallace |
| MARVIN MARSHALL, et al., | ) | |
| | ) | |
| Appellants. | ) | FILED: September 16, 2014 |

## Introduction

Appellants Marvin Marshall and P.J. Marshall ("the Marshalls") appeal from the judgment of the Circuit Court of St. Louis County granting Respondents Lovelace Farms, Inc., Wayne Lovelace, and Judy Lovelace's motion to stay arbitration. The Marshalls assert that the circuit court erred in staying arbitration because the Federal Arbitration Act ("FAA") compelled arbitration. Specifically, the Marshalls contend that the parties' disputes come within the broad scope of a valid arbitration agreement, and any questions as to arbitrability, including the issue of waiver, should be decided by the arbitrator, not the court. Because the issue of waiver based on litigation conduct is a matter for the court and not the arbitrator to decide, and because the Marshalls by their conduct waived their right to arbitration, we affirm the judgment of the circuit court.

Factual and Procedural Background

Wayne and Judy Lovelace ("the Lovelaces") operate Lovelace Farms, a tree farm near Elsberry, Missouri. The Lovelaces invented a method for accelerating tree growth called the Root Production Method ("RPM"). In 2006, the Lovelaces entered into a relationship with the Marshalls to create business entities in the hope of profiting from the RPM technology. To that end, three limited liability corporations were formed: RPM Holdings, LLC, ("Holdings"), RPM Ecosystems, LLC ("Ecosystems"), and RPM Technologies, LLC ("Technologies"). Equity in Holdings was split equally between the Marshalls and Lovelaces.[1] Ecosystems was wholly owned by Holdings, and thus was owned equally by the Marshalls and Lovelaces through their equal ownership of Holdings. Technologies was owned by the Lovelaces only. Each LLC was governed by its own operating agreement, and all three operating agreements contained the following mediation and arbitration clause:

> 11.1    All disputes, claims, or controversies between Members, or between the Company and any Member(s) arising under or in any way relating to this Agreement . . . shall be [] first submitted to and settled, if possible pursuant to mediation in accordance with the procedures set forth [below] and, if necessary, binding arbitration pursuant to Section 11.[2] of the Agreement.
>
> 11.2    Any Management Dispute not resolved pursuant to section 11.1 shall be resolved by arbitration pursuant to the procedures set forth below, before Neutral Arbitrators appointed in accordance with the Commercial Arbitration Rules of the American Arbitration Association . . . and administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules as in effect at the time a request for arbitration is made.

Sometime after the formation of the three LLCs, Ecosystems purchased trees from Lovelace Farms. Lovelace Farms alleged that Ecosystems failed to pay for the trees, and subsequently filed a collection action against Ecosystems. The lawsuit, filed July 6, 2009, in the

---

[1] The Marshalls and Lovelaces further divided their equity interests in the three companies between members of their immediate family. For clarity, we will refer to all members of each family collectively as "the Marshalls" and "the Lovelaces."

2

Circuit Court of Lincoln County, sought $465,000 for trees purchased by Ecosystems. The case was thereafter transferred from the Circuit Court of Lincoln County to the Circuit Court of St. Louis County.

On September 22, 2009, Ecosystems filed an answer and counterclaim petition against Lovelace Farms. On November 10, 2009, the Marshalls joined the lawsuit as counterclaim-plaintiffs and together with Ecosystems filed an amended counterclaim petition against Lovelace Farms and the Lovelaces, whom they joined as counterclaim-defendants. Ecosystems and the Marshalls asserted counterclaims for breach of contract, specific performance, tortious interference, breach of fiduciary duty, and fraud against Lovelace Farms and the Lovelaces (hereinafter, "the Lovelace parties"). In response, the Lovelace parties filed an amended petition raising additional claims against Ecosystems and the Marshalls individually for breach of contract, quantum merit, relief under the UCC, breach of fiduciary duty, aiding and abetting tortious interference, and an accounting.

On June 8, 2010, Holdings and Ecosystems commenced a federal bankruptcy proceeding in the United States Bankruptcy Court for the Northern District of New York. The bankruptcy filing imposed an automatic stay upon all litigation regarding those entities.

On November 4, 2013, the Marshalls filed a demand for arbitration with the American Arbitration Association. The initial demand named Holdings, Ecosystems, Technologies, and the Lovelaces as respondents and included claims for specific performance, breach of contract, breach of fiduciary duty, and related business torts. Shortly thereafter the Marshalls filed an amended demand for arbitration that withdrew their claims against Holdings and Ecosystems.

In response to the Marshalls' demand for arbitration, the Lovelace parties filed a motion to stay arbitration in the pending action in the Circuit Court of St. Louis County. The Lovelace

parties argued, *inter alia*, that the circuit court case involved claims not subject to arbitration and, to the extent that any claims were subject to arbitration, the Marshalls waived their right to arbitrate the claims by first pursuing such claims in circuit court.

The circuit court heard argument on the motion to stay arbitration on December 19, 2013. Thereafter, the circuit court requested supplemental briefing on the issue of waiver. On January 14, 2014, the circuit court granted the motion to stay arbitration. The Marshalls now appeal.

Point on Appeal

In their sole point on appeal, the Marshalls assert that the circuit court erred in staying arbitration because the FAA compels arbitration. The Marshalls contend that the parties' disputes are encompassed within the broad scope of a valid arbitration agreement, and that any questions regarding arbitrability, including the issue of waiver, must be decided by the arbitrator, not the court.

Standard of Review

"An appellate court's review of the arbitrability of a dispute is *de novo*." Dunn Indus. Grp., Inc. v. City of Sugar Creek, 112 S.W.3d 421, 428 (Mo. banc 2003). Our review of whether a party has waived its right to arbitrate is also *de novo*. Getz Recycling, Inc. v. Watts, 71 S.W.3d 224, 228 (Mo. App. W.D. 2002).

Discussion

In their sole point on appeal, the Marshalls maintain that the trial court erred in granting the Lovelace Parties' motion to stay arbitration because the litigated disputes between the parties fall within the broad scope of the arbitration clauses set forth in the individual operating agreements for Holdings, Technologies, and Ecosystems. The Marshalls reason that once it is

determined that litigated disputes come within the scope of a valid arbitration agreement, all other issues, including disputes over arbitrability, must be referred to the arbitrator.[2]

The Lovelace parties counter that the Marshalls are not parties to two of the operating agreements upon which they rely – the Ecosystems Operating Agreement and the Technologies Operating Agreement – and thus cannot avail themselves of the arbitration clauses in those agreements. The Lovelace parties contend that the only operating agreement to which the Marshalls are a party is the Holdings Operating Agreement, and that the Marshalls' claim against Lovelace Farms and the Lovelaces do not fall within the arbitration provision of the Holdings Operating Agreement because that arbitration provision applies only to disputes between "Members" or between "the Company and Members." The Lovelace parties further assert that, even if some of the Marshalls' claims fall within the scope of the arbitration clause in the Holdings Operating Agreement, the Marshalls have waived any right to now initiate arbitration as a result of their four-year delay in seeking arbitration and their participation in litigation conduct. The Lovelace parties further allege that waiver is a question for the court, not the arbitrator.

Valid arbitration clauses that affect interstate commerce must be enforced according to the FAA, 9 U.S.C. § 1, et. seq., unless an exception applies. McIntosh v. Tenet Health Sys. Hosps., Inc., 48 S.W.3d 85, 88 (Mo. App. E.D. 2001). Both parties agree that the contracts at issue here involved interstate commerce and, therefore, federal law applies. See Major Cadillac, Inc. v. Gen. Motors Corp., 280 S.W.3d 717, 721 (Mo. App. W.D. 2009). To determine whether

---

[2] The Marshalls also argue that the parties agreed to arbitrate all issues of arbitrability by adopting the rules of the American Arbitration Association in all three operating agreements. Because this argument was not presented to the trial court and is not contained in the Marshalls' point relied on, we do not consider it. State ex rel. Nixon v. Am. Tobacco Co., 34 S.W.3d 122, 129 (Mo. banc 2000); Rule 84.04(e).

arbitration should be compelled, a trial court must decide if a valid arbitration agreement exists and, if so, whether the disputes fit within the scope of the arbitration clause. Id.

**I.      Waiver through litigation conduct is decided by the court.**

A party to an arbitration agreement can waive its right to arbitrate disputes in different ways. The Eighth Circuit has held that claims of waiver based on some types of conduct must be decided by courts, while claims of waiver based on other types of conduct must be decided by arbitrators. In N & D Fashions, Inc. v. DHJ Industries, Inc., the Eighth Circuit explained that courts generally decide whether a party has waived its right to arbitrate by "actively participat[ing] in a lawsuit or tak[ing] other action inconsistent with the right to arbitration." N & D Fashions, Inc. v. DHJ Industries, Inc., 548 F.2d 722, 728 (8th Cir.1976) (quotations omitted). By contrast, arbitrators generally decide claims of waiver based on arguments that arbitration "would be inequitable to one party because relevant evidence has been lost due to the delay of the other." Id. The Eighth Circuit described this second kind of waiver as "'waiver' . . . in the sense of 'laches' or 'estoppel.'"[3] Id.

The record before us confirms that this case involves an assertion of the first kind of waiver – waiver through litigation conduct. Specifically, the Lovelace parties contend that the Marshalls waived any right they may have to arbitration under the operating agreements by first pursuing their claims before a judge in the circuit court, and participating in that litigation for four years before seeking arbitration. Under N & D Fashions, waiver through litigation conduct is clearly a matter for the court to decide. Id. Because the issue of waiver was appropriately before the circuit court, we now address the substantive arguments presented in this appeal.

_____

[3] N&D Fashions is consistent with those cases cited by the Marshalls that hold procedural questions such as waiver, delay, or a like defense to arbitrability are to be decided by the arbitrator. These cases correctly state that the second type of waiver discussed by the Eighth Circuit – waiver by delay – is an issue to be determined by the arbitrator. See Parler v. KFC Corp., 529 F. Supp. 2d 1009, 1011 (D. Minn. 2008) (providing an in-depth discussion of the two types of waiver traditionally recognized by federal courts).

## II. The Marshalls waived their right to arbitration.

Both Missouri and federal courts use the same three-factor test to establish waiver of the right to arbitrate. The party seeking to establish waiver bears the burden of demonstrating that the alleged waiving party: "(1) had knowledge of the existing right to arbitrate; (2) acted inconsistently with that existing right; and (3) prejudiced the party opposing arbitration by such inconsistent acts." Berhorst v. J.L. Mason of Missouri, Inc., 764 S.W.2d 659, 662 (Mo. App. E.d. 1988); Stifel, Nicolaus & Co. Inc. v. Freeman, 924 F.2d 157, 158 (8th Cir. 1991). Whether the party opposing arbitration has been prejudiced by acts inconsistent with arbitration is a determination to be made on a case-by-case basis. A finding of prejudice may result from lost evidence, duplication of efforts, use of discovery methods unavailable in arbitration, litigation of substantial issues, and postponing invoking arbitration, thereby causing the opposing party to incur unnecessary delay or expense. Reis v. Peabody Coal Co., 935 S.W.2d 625, 631 (Mo. App. E.D. 1996). Although delay in requesting arbitration by itself does not constitute prejudice, "delay and the moving party's trial-oriented activity are material factors in assessing prejudice." Id. (quoting Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc., 817 F.2d 250, 252 (4th Cir.1987)). Waiver must be evaluated in light of the federal policy which strongly favors arbitration. McCarney v. Nearing, Staats, Prelogar & Jones, 866 S.W.2d 881, 890 (Mo. App. W.D. 1993). Thus, in considering the three-factor test, any doubts as to whether waiver has occurred must be resolved in favor of arbitration. Freeman, 924 F.2d at 158.

The Marshalls do not dispute the first two factors of the waiver test; they concede their knowledge of the right to arbitrate and conduct inconsistent with that right. The Marshalls insist, however, that the Lovelace parties have suffered no prejudice as a result of their delay in seeking arbitration. We are not persuaded.

7

The record shows that Lovelace Farms filed a petition seeking collection of a debt against against Ecosystems in the Circuit Court of Lincoln County. Limited issues were presented in the initial petition. Lovelace Farms is not a party or signatory to any of the aforementioned operating agreements. The Marshalls substantially broadened the scope of the collection action filed by Lovelace Farms by filings counterclaims and adding parties. The record supports a finding that the Lovelace parties spent a significant amount of time and money pursuing claims and defending against counterclaims initiated by the Marshalls in the circuit court action. On October 22, 2009, the Lovelace parties filed an answer to Ecosystems and the Marshalls' Counterclaim and a motion to dismiss Count V of the Counterclaim. Thereafter, the Lovelace parties defended against two motions to strike and two motions to dismiss,[4] in addition to answering Ecosystems and the Marshalls' First Amended Counterclaim. In pursuit of their own claims, the Lovelace parties amended their petition three times and sought a temporary restraining order against Ecosystems and the Marshalls. Nothing in the record before us indicates that the Marshalls asserted their right to arbitration, or otherwise notified the Lovelace parties of their desire to proceed in arbitration, at any time throughout this period of substantial litigation activity.

The Marshalls could have demanded arbitration as early as 2009, but instead chose to initiate and pursue counterclaims against the Lovelace parties in circuit court. Prejudice can be established "where a party has postponed arbitration causing his adversary unnecessary delay or expense." Getz Recycling, Inc., 71 S.W.3d at 229. Prejudice may also be found "when a party's time and funds are expended because that party has not received the benefit of arbitration: 'efficient and low-cost resolution of disputes.'" Major Cadillac, Inc., 280 S.W.3d at 723

---

[4] A third motion to dismiss was filed by Ecosystems and the Marshalls on March 5, 2010, but the motion was not briefed by either party.

(quoting <u>Reis v. Peabody Coal Co.</u>, 935 S.W.2d 625, 631 (Mo. App. E.D.1996)). We find the Marshalls' four-year delay in demanding arbitration prejudiced the Lovelace parties by causing them unnecessary delay and expense and depriving them of the primary benefit of arbitration. [5] <u>See</u> <u>Major Cadillac, Inc.</u>, 280 S.W.3d at 723 (finding prejudice where party spent eight months litigating, thereby denying opposing party an efficient, low-cost resolution of their disputes); <u>MFA, Inc. v. HLW Builders, Inc.</u>, 303 S.W.3d 620, 625 (Mo. App. W.D. 2010) (finding prejudice where party waited nineteen months to demand arbitration and in the interim asserted affirmative claims against the party suggesting waiver). Therefore, the Marshalls waived any right to arbitrate.[6] Because we find the Marshalls waived any right to arbitrate, we need not address the parties' remaining arguments concerning the scope and applicability of the arbitration clauses. Point One is denied.

## Conclusion

For the foregoing reasons, we affirm the circuit court's grant of the Lovelace parties' motion to stay arbitration.

Kurt S. Odenwald, Presiding Judge

Robert G. Dowd, Jr., J., Concurs
Gary M. Gaertner, Jr., J., Concurs

---

[5] We are mindful that the stay following the bankruptcy filing by Holdings and Ecosystems caused a period of inactivity in the circuit action. But that fact does not erase the expense and deprivation of the benefits of arbitration resulting from the Marshalls' decision to file counterclaims in the collection action instead of initiating arbitration in 2009.

[6] The Marshalls contend that this Court may only find waiver where arbitration is being abused and waiver is necessary to prevent parties from relitigating adverse rulings or benefitting from a discovery process that is unavailable through arbitration. We are mindful of the presumption against waiver, but find no authority requiring proof of abuse of arbitration to establish the requisite prejudice.

9