

# Missouri Court of Appeals

### Southern District

### Division One

SPRINGLEAF FINANCIAL           )
SERVICES, INC.,                )
                               )
    Plaintiff-Appellant,       )     No. SD33980
                               )
vs.                            )
                               )     **Filed:  July 12, 2016**
BENNIE A. SHULL,               )
                               )
    Defendant-Respondent.      )

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Judge Sandra O. West

## **REVERSED**

Springleaf Financial Services, Inc. ("Springleaf") appeals from the trial court's order denying Springleaf's motion to compel arbitration in the action Springleaf filed against Bennie A. Shull ("Mr. Shull").[1]  Springleaf argues the trial court erred in finding Springleaf waived its right to compel arbitration.  We agree and reverse the trial court's order.

---

[1] The denial of a motion to compel arbitration is an appealable order even though it is not a final judgment.  ***Sanford v. CenturyTel of Missouri, LLC***, No. SC95465, 2016 WL 3563911, at *1 (Mo. banc June 28, 2016); ***Nicholson v. Surrey Vacation Resorts, Inc.***, 463 S.W.3d 358, 366-67 (Mo. App. S.D. 2015).

## Factual and Procedural Background

In January 2014, Mr. Shull signed a promissory note in favor of Springleaf. The loan documents also contained a section titled "Arbitration Agreement and Waiver of Jury Trial." That section provided in relevant part that "Lender and I agree that either party may elect to resolve all claims and disputes between us ("Covered Claims") by BINDING ARBITRATION." That section went on to provide that the parties also agreed to arbitrate the issues of "whether the claim or dispute must be arbitrated; the validity and enforceability of this Arbitration Agreement (except as expressly set forth in subsection G, below) and the Agreement, my understanding of them, or any defenses as to the validity and enforceability of this Arbitration Agreement and the Agreement[.]"[2]

---

[2] The section provided in full as follows:

> Except for those claims mentioned below under the heading "MATTERS NOT COVERED BY ARBITRATION," Lender and I agree that either party may elect to resolve all claims and disputes between us ("Covered Claims") by BINDING ARBITRATION. This includes, but is not limited to, all claims and disputes arising out of, in connection with, or relating to:

> This agreement with Lender; any previous retail credit agreement ("Retail Contract") assigned to Lender and any previous loan from or assigned to Lender, whether any of the foregoing may be open-end or closed-end; all documents, promotions, advertising, actions, or omissions relating to this or any previous loan or Retail Contract made by or assigned to Lender; any insurance product, service contract, membership plan or warranty purchased in connection with this or any previous loan or Retail Contract made by or assigned to Lender; any product or service offered to Lender's customers with any assistance or involvement by Lender; whether the claim or dispute must be arbitrated; the validity and enforceability of this Arbitration Agreement (except as expressly set forth in subsection G, below) and the Agreement, my understanding of them, or any defenses as to the validity and enforceability of this Arbitration Agreement and the Agreement; any negotiations between Lender and me; the closing, servicing, collecting or enforcement of any transaction covered by this Arbitration Agreement; any allegation of fraud or misrepresentation; any claim based on or arising under any federal, state, or local law, statute, regulation, ordinance, or rule; any claim based on state or federal property laws; any claim based on the improper disclosure of any information protected under state or federal consumer privacy laws; any claim or dispute based on any alleged tort (wrong), including intentional torts; any claim for damages or attorneys' fees; and any claim for injunctive, declaratory, or equitable relief.

However, the contract contained another provision which permitted either party to file an "Excluded Damages Lawsuit" seeking no more than the amount recoverable in a small claims action.[3]  That provision was in a subsection titled "MATTERS NOT COVERED BY ARBITRATION," which stated in pertinent part:

> Instead of pursuing arbitration, either Lender or I also have the option to bring a lawsuit in court to seek to recover the monetary jurisdictional limit of a small claims or equivalent court in my state (including costs and attorneys' fees), provided that no relief other than such recovery is requested in such lawsuit (an "Excluded Damages Lawsuit").

That section also provided "[n]either I nor Lender shall be deemed to have waived any arbitration rights by the fact of having exercised any self-help or judicial remedies of garnishment, repossession, replevin or foreclosure or by having filed in court an Excluded Damages Lawsuit."[4]

---

[3] In Missouri, the monetary jurisdictional limit of a small claims case is $5,000.  § 482.305, RSMo Cum. Supp. (2013).

[4] That section provided in full as follows:

> I agree that Lender does not have to initiate arbitration before exercising lawful self-help remedies or judicial remedies of garnishment, repossession, replevin or foreclosure, but instead may proceed in court for those judicial remedies. I may assert in court any defenses I may have to Lender's claims in such a lawsuit, but any claim or counterclaim for rescission or damages I may have arising out of, relating to, or in connection with Lender's exercise of those remedies must be arbitrated. Instead of pursuing arbitration, either Lender or I also have the option to bring a lawsuit in court to seek to recover the monetary jurisdictional limit of a small claims or equivalent court in my state (including costs and attorneys' fees), provided that no relief other than such recovery is requested in such lawsuit (an "Excluded Damages Lawsuit").  If an Excluded Damages Lawsuit is filed, the other party cannot require that the claims in that lawsuit be arbitrated. An Excluded Damages Lawsuit can be brought to recover money for myself or Lender only, not for any class or group of persons having similar claims. If such an Excluded Damages Lawsuit is filed by me or Lender, and any party to that lawsuit files an amendment, counterclaim, cross-claim, or third-party claim seeking to recover more than my state's small claims or equivalent court's monetary jurisdictional limit, then that claim, counterclaim, cross-claim, or third-party claim must be arbitrated in accordance with the procedures set forth in this Arbitration Agreement. Neither I nor Lender shall be deemed to have waived any arbitration rights by the fact of having exercised any self-help or judicial remedies of garnishment, repossession, replevin or foreclosure or by having filed in court an Excluded Damages Lawsuit.

3

On February 20, 2015, Springleaf filed a petition in the Greene County Circuit Court alleging Mr. Shull was in default under the note and seeking the unpaid balance on the note, $4,188.87, and attorney fees of $628.33. On April 10, 2015, Mr. Shull filed an answer to Springleaf's petition. On April 14, 2015, Mr. Shull filed a counterclaim. On May 7, 2015, Springleaf sent a letter to Mr. Shull through his attorney demanding arbitration of the counterclaims. In that letter Springleaf stated, "[a]lthough Springleaf is not required to arbitrate the claims it has asserted in this action, Springleaf is willing to submit *all* claims in this action (including Springleaf's claims) to arbitration." On May 14, 2015, Springleaf filed a motion to stay the proceedings and compel arbitration.

On June 17, 2015, the trial court held a hearing. The trial court denied the motion to stay the proceedings and compel arbitration based on its finding that Springleaf had waived its right to demand arbitration by suing in Circuit Court. Springleaf appeals.

### Standard of Review

Both the determination of whether there is an arbitration agreement and the determination of whether the arbitration right has been waived are reviewed *de novo.* ***Getz Recycling, Inc. v. Watts***, 71 S.W.3d 224, 228 (Mo. App. W.D. 2002).

### Discussion

In two points relied on, Springleaf contends the trial court erred in finding Springleaf waived its right to arbitrate. In its first point, Springleaf asserts the trial court's ruling was erroneous because Springleaf did not act inconsistently with its right to compel arbitration. In its second point, Springleaf asserts the

4

trial court's ruling was erroneous because Mr. Shull was not prejudiced by Springleaf's actions. Because both of these arguments challenge the propriety of the same legal ruling, *i.e.*, the trial court's conclusion that Springleaf waived its right to arbitrate, Springleaf's points will be addressed together.

The Federal Arbitration Act ("FAA") applies to "[v]alid arbitration clauses that affect interstate commerce . . . unless an exception applies." ***Lovelace Farms, Inc. v. Marshall***, 442 S.W.3d 202, 206 (Mo. App. E.D 2014). "To determine whether arbitration should be compelled, a trial court must decide if a valid arbitration agreement exists and, if so, whether the disputes fit within the scope of the arbitration clause." ***Id.*** However, "a party may waive its contractual right to arbitrate." ***Erdman Co. v. Phoenix Land & Acquisition, LLC***, 650 F.3d 1115, 1117 (8th Cir. 2011).

Courts apply a three-part test to determine whether there has been a waiver of the right to arbitrate. Waiver will be found where the alleged waiving party: "(1) had knowledge of the existing right to arbitrate; (2) acted inconsistently with that existing right; and (3) prejudiced the party opposing arbitration by such inconsistent acts." ***Lovelace Farms***, 442 S.W.3d at 207 (quoting ***Berhorst v. J.L. Mason of Mo., Inc.***, 764 S.W.2d 659, 662 (Mo. App. E.D. 1988)). Under the facts of this case, Springleaf knew about the arbitration clause because Springleaf drafted the agreement, *see **Boulds v. Dick Dean Economy Cars, Inc.***, 300 S.W.3d 614, 619 (Mo. App. E.D. 2010), and by filing its lawsuit Springleaf could arguably be said to have acted inconsistently

with its right to arbitrate.[5] *See Erdman*, 650 F.3 at 1118.  However, here the trial court erred because Mr. Shull was not prejudiced by Springleaf's allegedly inconsistent actions.

A determination that the other party was prejudiced is essential to a finding of a waiver of the right to arbitrate.  *Getz Recycling*, 71 S.W.3d at 229.  While "[t]he prejudice threshold . . . is not onerous[,]" *Erdman*, 650 F.3d at 1119 (quoting *Hooper v. Advance Am. Cash Advance Ctrs. Of Mo., Inc.*, 589 F.3d 917, 923 (8th Cir. 2009)), "[p]rejudice is determined on a case-by-case basis." *Getz Recycling*, 71 S.W.3d at 229 (quoting *Reis v. Peabody Coal Co.*, 935 S.W.2d 625, 631 (Mo. App. E.D. 1996)).  "[W]aiver of arbitration is not a favored finding, and there is a presumption against it." *Berhorst*, 764 S.W.2d at 659.  "[T]he burden of showing prejudice is on the party seeking waiver." *Getz Recycling*, 71 S.W.3d at 229.  "Prejudice may result from lost evidence, duplication of efforts, use of discovery methods unavailable in arbitration, or the litigation of substantial issues going to the merits." *Nettleton v. Edward D. Jones & Co.*, 904 S.W.2d 409, 411 (Mo. App. E.D. 1995).

The Eighth Circuit opinion in *Stifel, Nicolaus & Co., Inc. v. Freeman*, 924 F.2d 157 (8th Cir. 1991), is instructive.  There, after determining the brokerage firm's actions were inconsistent with the right to arbitrate, the court reasoned there was no prejudice because "no issues were litigated and the limited discovery conducted will be usable in arbitration." *Id.* at 159.

---

[5] There is a split in authority regarding whether the mere act of filing a lawsuit alone is sufficient action inconsistent with the right to arbitrate to support the conclusion that a party waived the right to arbitrate. *Compare Erdman*, 650 F.3d at 1118, *with Davis Corp. v. Interior Steel Equip. Co.*, 669 F. Supp. 32 (D.D.C. 1987).  However, we need not decide that precise issue under the facts of this case in light of our conclusion regarding the element of prejudice.

Here, similarly, there was no prejudice. The parties did not engage in any discovery. The delay between filing the petition and the assertion of the right to arbitrate was only three months. The parties filed no dispositive motions, and the trial court made no rulings on the merits of the parties' claims. Furthermore, Springleaf indicated its willingness to arbitrate all the claims involved, so there will be no duplication of efforts nor inconsistent judgments. Under these circumstances, there is no prejudice. Since there is no prejudice, the trial court should not have found Springleaf waived the right to arbitrate.

Mr. Shull attempts to save the trial court's ruling by challenging the validity of the arbitration agreement, arguing the arbitration agreement was unconscionable. However, as Springleaf correctly replies, the parties also agreed to arbitrate that issue.

"The FAA reflects the fundamental principle that arbitration is a matter of contract." ***Rent-A-Center, West, Inc. v. Jackson***, 561 U.S. 63 (2010). Generally, "courts should independently decide whether an arbitration panel has jurisdiction over the merits of any particular dispute." ***Kaplan v. First Options of Chicago, Inc.***, 19 F.3d 1503, 1509 (3d Cir. 1994); *see also **First Options of Chicago, Inc. v. Kaplan***, 514 U.S. 938, 941 (1995). However, "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." ***Rent-A-Center***, 561 U.S. at 68-69. Furthermore, "[j]ust as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that*

7

matter." ***First Options***, 514 U.S. at 943.  The courts "look to the [a]greement to see if the parties affirmatively addressed the question of who decides arbitrability." ***Dotson v. Dillard's, Inc.***, 472 S.W.3d 599, 604 (Mo. App. W.D. 2015) (quoting ***Sadler v. Green Tree Servicing, LLC***, 466 F.3d 623, 625 (8th Cir. 2006)).

Arbitrability becomes an issue for the arbitrator to decide where the agreement provides clear and unmistakable evidence that the parties intended to arbitrate those issues.  ***First Options***, 514 U.S. at 945.  "[A]n arbitration agreement need not recite verbatim that the 'parties agree to arbitrate arbitrability' in order to manifest 'clear and unmistakable' agreement." ***Dotson***, 472 S.W.3d at 604 (quoting ***Houston Refining L.P. v. United Steel, Paper and Forestry, Rubber Mfg.***, 765 F.3d 396, 410 n.28 (5th Cir. 2004)). "Rather, '[a] delegation provision that gives an arbitrator the authority to resolve disputes relating to the "enforceability," "validity," or "applicability" of an arbitration agreement constitutes clear and unmistakable evidence that the parties intended to arbitrate arbitrability.'" ***Id.*** (quoting ***W.L. Doggett LLC v. Paychex, Inc.***, 92 F.Supp.3d 593, 597 (S.D. Tex. 2015)).  "[W]hen a party seeking to compel arbitration relies upon a delegation provision, the court must enforce that provision if it clearly and unmistakably provides authority for an arbitrator to determine arbitrability of the issues, unless the opposing party directly challenges the enforceability of the delegation provision[.]" ***Id.*** at 605.

Here, the arbitration clause included a list of the types of claims the parties intended to arbitrate in a section titled "CLAIMS AND DISPUTES COVERED." Among the listed claims were "claims and disputes arising out of, in connection

with, or relating to . . . the validity and enforceability of this Arbitration Agreement[.]"  This language is clear and unmistakable evidence the parties intended to arbitrate arbitrability.  *See **id.***  Mr. Shull's arguments regarding unconscionability must be submitted to arbitration.

## Decision

The trial court's order is reversed.  The case is remanded for entry of an order compelling arbitration on all claims raised.

MARY W. SHEFFIELD, C.J. – OPINION AUTHOR

DANIEL E. SCOTT, P.J. – CONCURS IN RESULT IN SEPARATE OPINION

JEFFREY W. BATES, J. – CONCURS



# Missouri Court of Appeals

### Southern District

### Division One

SPRINGLEAF FINANCIAL )
SERVICES, INC., )
)
    Plaintiff-Appellant, )
)
vs. )    No. SD33980
)
BENNIE A. SHULL, )    FILED: 7.12.16
)
    Defendant-Respondent. )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

### Honorable Sandra O. West, Judge

## OPINION CONCURRING IN RESULT

I concur in the result for a different reason. By express terms of the loan agreement quoted in the majority opinion, Springleaf did not waive any arbitration rights "by having filed in court an Excluded Damages Lawsuit."

DANIEL E. SCOTT, P.J. – SEPARATE OPINION AUTHOR