

# In the Missouri Court of Appeals
## Eastern District
### DIVISION TWO

| | | |
|---|---|---|
| BERTHA LOPEZ, ET AL., | ) | No. ED110059 |
| | ) | |
| Respondents, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | |
| GMT AUTO SALES, INC., | ) | Honorable Jason D. Dodson |
| | ) | |
| and | ) | |
| | ) | |
| PRESTIGE FINANCIAL SERVSICES, INC., | ) | |
| | ) | |
| Appellants. | ) | FILED: December 6, 2022 |

## Introduction

GMT Auto Sales, Inc. ("GMT") and Prestige Financial Services, Inc. ("Prestige")

(collectively, "Appellants") appeal from the circuit court's judgment denying their motion to stay

proceedings and compel arbitration following an evidentiary hearing in which Bertha Lopez

("Lopez") contested the existence of an agreement to arbitrate. Appellants raise four points on

appeal in which they assert the circuit court either misapplied the law in denying the motion to

compel arbitration or entered a judgment that was against the weight of the evidence. We hold

that the circuit court misapplied the law in determining that Lopez did not assent to arbitration

because the facts adduced at the evidentiary hearing demonstrate that Lopez signed the

arbitration agreement. The record further lacks evidence that Lopez was fraudulently induced to

sign the arbitration agreement. However, because we find GMT waived its right to compel

arbitration by acting inconsistently with that right through substantially litigating various claims for seventeen months prior to seeking to compel arbitration under the terms of its anti-waiver provisions, we affirm the circuit court's denial of GMT's motion.

## Factual and Procedural History

In May 2019, Lopez and her husband and third-party defendant, Anastacio Humberto Ramos ("Ramos"), attempted to purchase a vehicle from GMT. Lopez and Ramos signed a Retail Installment Contract containing an arbitration provision and also signed a separate Agreement to Arbitrate containing an anti-waiver provision (collectively, the "Arbitration Agreements"). Lopez and Ramos traded in their car, which GMT later resold, and drove the new vehicle from the lot believing they had purchased it. GMT later repossessed the vehicle and informed Lopez and Ramos that their car loan, intended to be financed through Prestige, did not get finalized.

Lopez filed her original petition in June 2019, alleging multiple counts against GMT and Prestige, specifically for fraud, violations of the Missouri Merchandising Practices Act (the "MMPA"), and conversion arising out of a vehicle transaction. Lopez maintained that GMT and Prestige engaged in an unlawful "yo-yo" or "spot-delivery" sale.[1] In August 2019, GMT answered the petition and raised affirmative defenses, including the Agreement to Arbitrate. GMT also filed a petition against Ramos, alleging two counts for breach of contract for Ramos's failure to indemnify and hold GMT harmless under the terms of the signed Employment and

---

[1] The Supreme Court of South Carolina has described alleged "yo-yo" or "spot-delivery" sales as follows: "The consumer believes a vehicle's installment or sale is final and the dealer gives the consumer possession of the car 'on the spot.' The dealer later tells the consumer to return the car because the financing has fallen through. If the consumer does not return the vehicle or agree to rewrite the transaction on less favorable terms, the dealer repossesses the vehicle." Singleton v. Stokes Motors, Inc., 595 S.E.2d 461, 467 (S.C. 2004) (internal quotation omitted); see also Tyson v. Sterling Rental, Inc., 836 F.3d 571, 583 n.5 (6th Cir. 2016) (internal citation omitted) (describing so-called "spot delivery" or "conditional delivery" agreements that ostensibly protect against the possibility that the buyers' application for credit will not be approved for financing).

2

Income Verification Agreement ("Verification Agreement") and Conditional Delivery Agreement. In its answer to Lopez's petition, Prestige denied receiving assignment of the loan.

The parties engaged in discovery, litigated discovery disputes, and filed summary judgment motions. Lopez voluntarily dismissed her MMPA claim against Prestige due to an alleged MMPA exemption, but later sought leave to amend her pleadings and file the First Amended Petition to reinstate the MMPA count against Prestige. The First Amended Petition is identical to the original petition. Concurrently, Ramos sought leave to file Counterclaims and Crossclaims against GMT and Prestige, alleging the same three claims as Lopez. Over opposition, and with some motions for partial summary judgment pending, the circuit court in December 2020 permitted Lopez to file the First Amended Petition and permitted Ramos to file his Counterclaims and Crossclaims.

The following month, GMT filed its answers to the First Amended Petition and Ramos's Counterclaims. At that time, GMT also moved to stay proceedings and compel arbitration. Prestige joined in GMT's motion. The circuit court conducted an evidentiary hearing on whether a valid agreement to arbitrate existed. During the evidentiary hearing, Lopez testified that she and Ramos signed the Arbitration Agreements. Lopez testified that GMT's salesperson, Dennis Schwartz ("Schwartz"), held the documents throughout the transaction, did not give her or Ramos the documents, but instead folded back the pages and directed them where to sign on each page. Lopez testified that Schwartz rushed them through the sales process, did not explain the contents of the Arbitration Agreements, ignored her questions, and made sexist comments about her to Ramos. Schwartz also provided testimony, which the circuit court did not find credible.

3

The circuit court subsequently entered its order and judgment denying GMT's motion to stay proceedings and compel arbitration (the "Judgment"). In its written findings of fact and conclusions of law, the circuit court found that Lopez and Ramos signed the Arbitration Agreements. However, the circuit court determined that no agreement to arbitrate was reached because Lopez was not allowed to read the documents, no one from GMT explained the documents to Lopez or Ramos, and Lopez's questions during the sales process were ignored. GMT appealed from the Judgment, and Prestige joined in the appeal. This Court stayed the appeal pending the decision of the Supreme Court of Missouri in Bridgecrest Acceptance Corp. v. Donaldson, 648 S.W.3d 745 (Mo. banc 2022).

## Points on Appeal

Appellants raise four points on appeal. Point One argues the circuit court erred in issuing the Judgment by misapplying the law in that Missouri presumes parties have knowledge of contracts they sign and may not avoid the consequences of the agreement because they did not know or understand what they were signing. Point Two maintains the circuit court erred in issuing the Judgment because the Arbitration Agreements contained severable delegation provisions, which required compelling arbitration in that (a) the Federal Arbitration Act ("FAA") requires enforcement of delegation provisions, (b) Lopez and Ramos did not specifically challenge the arbitration provision requiring the contract's validity to be determined by an arbitrator, and (c) the Agreement to Arbitrate requires all disputes between the parties to be submitted to binding arbitration. Point Three asserts the Judgment was against the weight of the evidence because Lopez affirmatively testified that an agreement to arbitrate existed between herself and GMT. Point Four claims the Judgment was against the weight of the evidence in that evidence established the essential elements of an agreement to arbitrate, specifically that (a) the Agreement to Arbitrate was valid and the parties' claims fell within its scope, (b) there was offer

4

and acceptance, and (c) the Agreement to Arbitrate contained mutual promises supplying the necessary consideration.

## Standard of Review

Lopez contested the existence of an agreement to arbitrate, and the circuit court conducted an evidentiary hearing pursuant to Section 435.355[2] before issuing its Judgment. See Bridgecrest, 648 S.W.3d at 751.

> As such, in an appeal from a circuit court's order overruling a motion to compel arbitration when there is a dispute as to whether the arbitration agreement exists, the circuit court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.

Duncan v. TitleMax of Missouri, Inc., 607 S.W.3d 243, 247 (Mo. App. W.D. 2020) (quoting Theroff v. Dollar Tree Stores, Inc., 591 S.W.3d 432, 436 (Mo. banc 2020)). "[I]ssues relating to the existence of an arbitration agreement are factual and require our deference to the [circuit] court's findings." Id. (quoting Baier v. Darden Rests., 420 S.W.3d 733, 736 (Mo. App. W.D. 2014) (quoting Katz v. Anheuser-Busch, Inc., 347 S.W.3d 533, 539 (Mo. App. E.D. 2011)). Additionally, we will affirm the circuit court's ruling "if it is cognizable under any theory, regardless of whether the reasons advanced by the trial court are wrong or insufficient." EM Med., LLC v. Stimwave LLC, 626 S.W.3d 899, 908 (Mo. App. E.D. 2021) (internal quotation omitted). However, we review de novo questions of law, including the interpretation of contracts. Bridgecrest, 648 S.W.3d at 751 (citing Theroff, 591 S.W.3d at 436).

## Discussion

### I.     Point One—Misapplication of Law[3]

---

[2] All Section references are to RSMo (2016).

[3] In their responsive brief, Lopez and Ramos suggest GMT's briefing was not compliant with our briefing standards under Rule 84.04. See Mo. R. Civ. P. (2022). We find the briefing sufficient to review the merits of the point addressed in the foregoing discussion. See State v. Minor, 648 S.W.3d 721, 729 (Mo. banc 2022) (noting "appellate courts may exercise their discretion, *ex gratia,* to address what they believe are the merits of a case").

5

"Missouri has long recognized that a person signing an agreement has a duty to read it." Farmland Indus., Inc. v. Bittner, 920 S.W.2d 581, 584 (Mo. App. W.D. 1996) (citing Sanger v. Yellow Cab Co., Inc., 486 S.W.2d 477, 481 (Mo. banc 1972)). "Missouri law presumes that a party had knowledge of the contract he or she signed; and those who sign a contract have a duty to read it and may not avoid the consequences of the agreement on the basis that they did not know what they were signing." Bertocci v. Thoroughbred Ford, Inc., 530 S.W.3d 543, 553 (Mo. App. W.D. 2017) (quoting Grossman v. Thoroughbred Ford, Inc., 297 S.W.3d 918, 922 (Mo. App. W.D. 2009)).

Here, the parties on appeal acknowledge that "[a] signer's failure to read and understand a contract is not, without fraud or the signer's lack of capacity to contract, a defense to the contract." Chochorowski v. Home Depot U.S.A., 404 S.W.3d 220, 228 (Mo. banc 2013) (citing Robinson v. Title Lenders, Inc., 364 S.W.3d 505, 509 n.4 (Mo. banc 2012)) (additional citations omitted); Repair Masters Constr., Inc. v. Gary, 277 S.W.3d 854, 858 (Mo. App. E.D. 2009) (internal citation omitted) ("The failure to read a document prior to signing it is not a defense, and does not make a contract voidable, absent fraud."); Farmland Indus., Inc., 920 S.W.2d at 584 (internal citation omitted) ("Absent a showing of fraud, a party who is capable of reading and understanding a contract is charged with the knowledge of that which he or she signs."). Although both parties acknowledge the operative law, the circuit court erroneously failed to apply that law in its Judgment. Rather, the circuit court expressly found that Lopez and Ramos signed the Arbitration Agreements, but then concluded that neither Lopez nor Ramos assented to any agreement. In reaching its conclusion, the circuit court made no findings regarding either fraud or lack of capacity. See Chochorowski, 404 S.W.3d at 228 (citing Robinson, 364 S.W.3d

6

at 509 n.4). By failing to apply the relevant law, the circuit court erred. See Duncan, 607 S.W.3d at 247 (quoting Theroff, 591 S.W.3d at 436).

The parties dispute whether the Judgment, although silent as to fraud, nonetheless reached the right result. Lopez relies primarily on Theroff, in which a blind employee denied signing an arbitration agreement during the hiring process, and the Supreme Court affirmed the circuit court's denial of the employer's motion to compel arbitration. Theroff, 591 S.W.3d at 437–39. However, Theroff is distinguishable on multiple grounds. Here, the uncontroverted evidence is that Lopez signed the Arbitration Agreements. We note that at the evidentiary hearing, the circuit court clarified that there was no language barrier in terms of Lopez's understanding of the sales transaction or her review of the Arbitration Agreements. Contrastingly, in Theroff, the circuit court made no factual finding that the employee electronically signed the arbitration agreement, and the Supreme Court specifically noted that there was conflicting evidence about the signature at the evidentiary hearing. Id. at 435. "Unlike the standard scenario in which there is no dispute about whether a party signed an arbitration agreement, when a party disputes signing, the court must first decide the existence of an agreement to arbitrate." Id. at 437 (internal citation omitted). A "purported signature" is not enough to satisfy Section 435.355.1. Id. at 438 n.7 (noting that "[w]hen [the employee] alleged she was not involved in the procurement of her electronic signature, the circuit court was entitled to find, as an issue of fact, that there was not an actual or present occurrence of any agreement to arbitrate"). Saliently, the majority opinion in Theroff distinguished its unique facts from those cases, like Robinson, in which a signer's failure to read or understand a contract is not a defense, as follows:

> [The employee's] visual impairment caused her to have no knowledge of any
> arbitration agreement. Inherent in the circuit court's order is that [the employee]

7

> did not sign the agreement and did not authorize anyone to sign it on her behalf. This is not the case of a signer's failure to read or understand a contract. This is a case of a party being unaware of the existence of any arbitration agreement.

Id. at 440 n.9 (citing Robinson, 364 S.W.3d at 509 n.4, 517–18). The particular facts of Theroff are not present here because Lopez testified at the evidentiary hearing that she signed the Arbitration Agreements, and the circuit court's findings reflected that fact. See id.

Lopez next suggests that the circuit court's findings implied the use of fraud, trickery, and deceit, such that her signatures on the Arbitration Agreements did not manifest her assent to arbitrate her claims. We disagree. Even deferring to the circuit court's view of the evidence presented at the hearing, as we must, these factual findings simply do not support a finding to set aside the signed Arbitration Agreements and the corresponding denial of Appellants' motion to compel arbitration. See id. In particular, Lopez testified that Schwartz rushed her and Ramos through the sales process, Schwartz refused to answer her questions about the contents, and Schwartz did not hand her the documents to read but instead held them, folded back the pages, and directed her where to sign. Lopez testified that Ramos told her they should complete the paperwork, see if they were approved, and leave with a vehicle. Despite her express concerns surrounding the sales process, Lopez nevertheless chose to proceed with the transaction and sign the documents, including the Arbitration Agreements. Missouri law recognizes that "common factors indicating unconscionability include, but are not limited to, high pressure sales tactics, unreadable fine print, and misrepresentation or unequal bargaining positions." Bertocci, 530 S.W.3d at 552 (citing Eaton v. CMH Homes, Inc., 461 S.W.3d 426, 433 (Mo. banc 2015)). However, Missouri jurisprudence is equally clear that "[a] court should not invalidate an arbitration agreement in a consumer contract simply because it is contained in a contract of adhesion or because the parties had unequal bargaining power, as these are hallmarks of modern

consumer contracts generally." Id. (quoting Eaton, 461 S.W.3d at 438); see also Ramirez-Leon v. GGNSC, LLC, 553 S.W.3d 318, 324 (Mo. App. W.D. 2018) (finding that the appellant was not absolved from her obligation to read the arbitration agreement upon her incapacitated son's admission into a long-term care facility even though she was told she had to sign the documents and was not given an opportunity to ask questions).

Here, Lopez did not testify at the evidentiary hearing that she was fraudulently induced to sign the Arbitration Agreements. While the record supports a finding of questionable high pressure sales tactics, the record lacks any evidence of fraud, and the circuit court made no finding of fraud in its Judgment. See Chochorowski, 404 S.W.3d at 228 (citing Robinson, 364 S.W.3d at 509 n.4); Bertocci, 530 S.W.3d at 551–52. We very much appreciate the pressure facing consumers like Lopez and Ramos. Despite being denied an opportunity to ask questions and review the documents, consumers often still choose to sign said documents without reading them. Under Missouri law, such facts do not raise a meritorious defense to a contract. See Chochorowski, 404 S.W.3d at 228 (citing Robinson, 364 S.W.3d at 509 n.4); Ramirez-Leon, 553 S.W.3d at 324. While Lopez's testimony about Schwartz's conduct during the sale is understandably concerning, such conduct does not constitute fraud under Missouri law for purposes of voiding Lopez's and Ramos's assent to the signed Arbitration Agreements. See Bertocci, 530 S.W.3d at 552 (reversing a circuit court's denial of a motion to compel arbitration where the consumer in a vehicle transaction "asserted that she was rushed through the process, did not understand the paperwork she was signing, and was not given a chance to review the paperwork"). Lopez suggests she could not have known about the arbitration provision in the Retail Installment Contract given the manner in which the pages were presented. But the signature block on the Retail Installment Contract shows Lopez's and Ramos's signatures

9

directly below and even touching a statement clearly referencing the incorporated arbitration provision. This fact undermines the circuit court's determination that Lopez was precluded from knowing of the presence of an arbitration provision and therefore could not have assented thereto. See id. at 553–54 (citing Grossman, 297 S.W.3d at 922–23) (noting that evidence "plaintiffs did not read vehicle purchase agreement containing arbitration provision and notice of arbitration printed boldly next to their signatures mitigates against finding of procedural unconscionability"). Therefore, even giving deference to the circuit court's factual findings, the testimony from the evidentiary hearing simply does not demonstrate Lopez was fraudulently induced to sign the Arbitration Agreements so as to render her signatures ineffective. See Chochorowski, 404 S.W.3d at 228 (citing Robinson, 364 S.W.3d at 509 n.4).

We note that although the trial court made no specific mention of unconscionability, Lopez raises the issue of procedural unconscionability on appeal, reasoning that her signatures on the Arbitration Agreements did not manifest her assent to arbitration due to Schwartz's conduct during the sales process. See Brewer v. Missouri Title Loans, 364 S.W.3d 486, 500 (Mo. banc 2012) (Price, J., dissenting) (noting "[p]rocedural unconscionability . . . deals with the formalities of making the contract and focuses on whether the parties had a voluntary and sufficient meeting of the minds to bind each other to the terms of the writing). However, if an agreement to arbitrate is found to exist and contains a delegation clause, arbitration is the forum in which to assess not only the merits of the claims but whether or not the arbitration agreement should be enforced due to procedural and substantive unconscionability. See Theroff, 591 S.W.3d at 439 (internal citations omitted) (noting parties may agree to arbitrate threshold questions of arbitrability by including a delegation provision in an arbitration agreement); TD Auto Fin., LLC v. Bedrosian, 609 S.W.3d 763, 770 (Mo. App. E.D. 2020) (internal citations

omitted) (noting parties may agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions, including whether the arbitration agreement is unconscionable and thus not enforceable). Here, unlike in Bridgecrest, the question addressed by the circuit court was whether an agreement to arbitrate existed and not whether such agreement should be denied enforcement due to substantive and procedural unconscionability. See Bridgecrest, 648 S.W.3d at 754.[4]

Because the evidence adduced at the evidentiary hearing showed Lopez signed the Arbitration Agreements and the record lacks any evidence of fraud, the circuit court misapplied the law in finding Lopez did not assent to arbitrate her claims. See Chochorowski, 404 S.W.3d at 228 (citing Robinson, 364 S.W.3d at 509 n.4). Accordingly, the circuit court erred by misapplying the law. See Duncan, 607 S.W.3d at 247 (quoting Theroff, 591 S.W.3d at 436). Given our finding that an agreement to arbitrate existed, Point One is dispositive of the remaining substantive points on appeal. However, notwithstanding the circuit court's misapplication of law, Lopez maintains we should affirm the denial of GMT's motion to stay proceedings and compel arbitration under the alternative theory of waiver. See EM Med., LLC, 626 S.W.3d at 908 (internal quotation omitted).

## II.     Waiver

---

[4] Additionally, a finding of procedural unconscionability alone is insufficient to find an arbitration agreement unenforceable. See Brewer, 364 S.W.3d at 500 (Price, J., dissenting) ("Traditional unconscionability law in Missouri requires a showing that the contract is both procedurally and substantively unconscionable."). "For a contract to be void on the basis that it is unconscionable, it must be procedurally and substantively unconscionable, although not in equal amounts." Kansas City Urology, P.A. v. United Healthcare Servs., 261 S.W.3d 7, 15 (Mo. App. W.D. 2008) (internal citation omitted). "For example, a contract can be void because of a substantial amount of procedural unconscionability but only a small amount of substantive unconscionability, or vice versa." Id. (internal citation omitted).

11

In her suggestions in opposition to GMT's motion to stay and compel arbitration, Lopez raised the issue of waiver before the circuit court, and the parties agree that remand is unnecessary because the record provides a sufficient basis on which to decide the issue. In particular, Lopez reasons that even if we find an agreement to arbitrate existed, arbitration should not be compelled because GMT waived its right to compel arbitration when it acted inconsistently with that right by litigating for over a year in the circuit court.

A.     Anti-Waiver Provision Applicability and Enforceability

GMT counters that the anti-waiver provisions in the signed Agreement to Arbitrate and Retail Installment Contract preclude a finding that it waived its right to pursue arbitration.

We review the terms of an anti-waiver provision de novo, as we "examine arbitration agreements as [we] would any other contractual agreement, and the customary rules of state contract law and contract interpretation apply." State ex rel. Greitens v. Am. Tobacco Co., 509 S.W.3d 726, 741 (Mo. banc 2017) (citing Triarch Indus., Inc. v. Crabtree, 158 S.W.3d 772, 776 (Mo. banc 2005)); see also State ex rel. Hewitt v. Kerr, 461 S.W.3d 798, 807 (Mo. banc 2015) (quoting AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011)) (noting "[c]ourts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms"). The primary rule of contract interpretation is to "ascertain the intent of the parties and give effect to that intent" given the "plain, ordinary, and usual meaning of the contract's terms." Greitens, 509 S.W.3d at 741 (internal citation omitted).

Our courts have recognized that valid anti-waiver provisions may serve to insulate a party from waiver that results from specific actions contemplated by the agreement, such as exercising self-help remedies, like vehicle repossession, or filing an action in circuit court. See Bridgecrest, 648 S.W.3d at 754–55. Here, the Agreement to Arbitrate contains the following anti-waiver provision:

12

Notwithstanding any other provisions in this Agreement, the Parties agree they are not waiving their right to exercise any self-help or provisional remedy available by law or pursuant to an agreement between them. Nor is either party required to arbitrate any individual claim that is filed and properly within the jurisdiction of a small claims court or equivalent state court. Until a Party entitled to do so requests arbitration, any Party to this Agreement may proceed with such other rights and remedies; provided, however, that neither Party waives the right to request arbitration under this Agreement by exercising other rights and remedies or by initially agreeing to litigate a claim in court. In addition, if a claim originally brought in a small claims court (or equivalent states [sic] court) is transferred to [sic] appealed to a higher trial court or if a new claim is asserted after the initial filing of such litigation, the Parties shall have the right to request arbitration under this Agreement.

The Retail Installment Contract also contains an arbitration provision with the following anti-waiver provision:

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed, or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief.

Under their plain terms, the anti-waiver provisions present some challenges in being applied to the conduct at issue. See Greitens, 509 S.W.3d at 741 (internal citation omitted). First, litigating in the circuit court is neither "self-help" nor a "provisional remedy." GMT's petition for breach-of-contract claims against Ramos cannot be construed as an action to recover the vehicle (which it had already repossessed), an action to recover a deficiency, nor a claim for injunctive relief. See Naegele v. Biomedical Sys. Corp., 272 S.W.3d 385, 390 (Mo. App. E.D. 2008) (internal citation omitted) (noting injunctive relief is proper where there is no adequate remedy at law). Neither is the circuit court "within the jurisdiction of a small claims court or equivalent state court," as the jurisdiction of Missouri's small claims court is statutorily limited to claims valued at $5,000 or less. See Sections 482.305 ("When sitting as a small claims court, the judge shall have original jurisdiction of all civil cases, whether tort or contract, where the

13

amount in controversy does not exceed five thousand dollars, exclusive of interest or costs, or as provided in this chapter."); 482.315 (providing that a plaintiff who files in a small claims action when the amount in controversy exceeds five thousand dollars "waives any claim for any sum in excess of five thousand dollars"). Here, neither Lopez nor GMT filed their actions in the small claims court, nor did either party attest that the value of the controversy or the amount sought was $5,000 or less. In their prayers for relief, Lopez sought minimally $12,000 for the trade-in vehicle plus other damages, and GMT sought four types of unenumerated damages for its breach-of-contract claims against Ramos in which its request for attorneys' fees and costs alone reasonably could be expected to exceed $5,000 for eighteen months of motion practice and hearings. Both parties filed their petitions in the circuit court and demanded jury trials.

The plain language of the anti-waiver provision in the Retail Installment Contract is not applicable to the circuit-court litigation at issue. See Greitens, 509 S.W.3d at 741 (internal citation omitted). But the separate anti-waiver provision contained within the Agreement to Arbitrate states that "neither Party waives the right to request arbitration under this Agreement by exercising other rights and remedies or *by initially agreeing to litigate a claim in court.*" (Emphasis added). The general reference to "court" in that phrase is sufficiently expansive to suggest that this phrase of the anti-waiver provision potentially could encompass the parties' initial filings in the circuit court. See Bridgecrest, 648 S.W.3d at 750.

Accepting that the anti-waiver provision of the Agreement to Arbitrate is applicable, GMT asserts that the provision includes the necessary consideration and mutuality of non-illusory obligations to be conscionable and enforceable. See Bridgecrest, 648 S.W.3d at 755 (discussing how "[a] contract can become unconscionable and unenforceable when it ostensibly contains mutual promises but one party retains the unilateral right to modify or alter the contract

14

and thereby divest itself of its obligation to uphold its side of the bargain"). For purposes of this appeal, we assume *arguendo* that the anti-waiver provision within the Agreement to Arbitrate is valid. The mutuality of the terminology is similar to the provision upheld in Bridgecrest, which entitled both parties to initially assert or respond to a claim in court rather than being wholly limited to contesting self-help or provisional remedies via arbitration. See id. at 755–56. Thus, the issue remaining before us is whether the anti-waiver provisions continue to insulate GMT from relinquishing its contractual right to arbitrate following GMT's prolonged and substantial conduct in litigating and defending claims with Lopez and Ramos, which Lopez and Ramos argue is inconsistent with GMT's right to arbitrate pursuant to the anti-waiver provisions.

B.     Waiver by Acting Inconsistently with the Right to Arbitrate

Missouri has long recognized that parties may waive the right to arbitration. See Reis v. Peabody Coal Co., 935 S.W.2d 625, 630 (Mo. App. E.D. 1996) (internal citation omitted); see also Bertocci, 530 S.W.3d at 557 (quoting Gentry v. Orkin, LLC, 490 S.W.3d 784, 788 (Mo. App. W.D. 2016)). "Waiver results from a party's substantial participation in litigation to a point inconsistent with an intent to arbitrate[.]" Bull v. Torbett, 529 S.W.3d 832, 840 (Mo. App. W.D. 2017) (internal quotation omitted); see Millennium Anesthesiology Consultants, LLC v. Walsh, 562 S.W.3d 373, 378–79 (Mo. App. E.D. 2018) (quoting Boulds v. Dick Dean Econ. Cars, Inc., 300 S.W.3d 614, 620 (Mo. App. E.D. 2010)).

The United States Supreme Court recently addressed waiver of the contractual right to arbitrate in Morgan v. Sundance, Inc., --- U.S. ---, 142 S. Ct. 1708 (2022). Prior to Morgan, Missouri applied the following three-part test: "A party waives its right to arbitrate if it: (1) had knowledge of the right to arbitrate; (2) acts inconsistently with that right; and (3) the party opposing arbitration was prejudiced by such inconsistent acts." Millennium, 562 S.W.3d at 377 (internal citation omitted); Bertocci, 530 S.W.3d at 557 (quoting Gentry, 490 S.W.3d at 788);

15

Springleaf Fin. Servs., Inc. v. Shull, 500 S.W.3d 276, 280 (Mo. App. S.D. 2016) (quoting Lovelace Farms, Inc. v. Marshall, 442 S.W.3d 202, 207 (Mo. App. E.D. 2014)). In reviewing the Eighth Circuit's test for waiver, Morgan eliminated the prejudice prong, holding that courts may not use the FAA's policy favoring arbitration to create arbitration-specific variants of procedural rules, such as requiring a finding of prejudice when considering waiver of the contractual right to arbitrate. Morgan, 142 S. Ct. at 1712 (internal quotation omitted). Morgan emphasized that waiver occurs when a party "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right[.]" Id. at 1714. "To decide whether a waiver has occurred, the court focuses on the actions of the person who held the right; the court seldom considers the effects of those actions on the opposing party." Id. at 1713. "The federal policy is about treating arbitration contracts like all others, not about fostering arbitration." Id. (internal citation omitted). Thus, "[i]f an ordinary procedural rule—whether of waiver or forfeiture or what-have-you—would counsel against enforcement of an arbitration contract, then so be it." Id.

GMT acknowledged during oral argument that the inclusion of an anti-waiver provision in an arbitration agreement does not automatically preclude a finding of waiver following a party's substantial participation in litigation to a point inconsistent with an intent to arbitrate. Indeed, if an anti-waiver provision constituted an unassailable shield under this judicially-created doctrine, contracting parties hypothetically could use anti-waiver provisions to delay a request for arbitration until jury deliberations had commenced following a trial on the merits of arbitrable claims. To allow such a result would offend established principles of fairness and utterly undermine the notions of judicial economy.

The parties are reminded that the doctrine of waiver by inconsistent acts is a *judicially created doctrine* designed to protect the integrity and resources of the court as well as promote

fairness to both parties whose disputes were subject to the benefits of "efficient and low-cost resolution of disputes" from the outset of the litigation. See Lovelace, 442 S.W.3d at 208 (quoting Major Cadillac, Inc. v. General Motors Corp., 280 S.W.3d 717, 723 (Mo. App. W.D. 2009)); see also Millennium, 562 S.W.3d at 378–79 (citing Lewallen v. Green Tree Servs., L.L.C., 487 F.3d 1085, 1094 (8th Cir. 2007)) (noting the waiver doctrine seeks to avoid unnecessary expense, delay, duplication of efforts, and deprivation of arbitration's main purpose). As made clear in Missouri jurisprudence and reiterated in Morgan, at issue on appeal is not whether GMT had a right to request arbitration of the dispute—it did. The issue we must resolve is whether GMT waived that contractual right by substantially participating in litigation to a point inconsistent with an intent to arbitrate. See Morgan, 142 S. Ct. at 1714; see also Lobel Fin. Inc. v. Bothel, 570 S.W.3d 87, 94 n.4 (Mo. App. W.D. 2018) (citing Triarch Indus., Inc., 158 S.W.3d at 776–77) (noting that "judicially determined waiver of the right to arbitrate where a party knows of the right to arbitrate, and acts inconsistently with that right . . . is to be distinguished from whether an arbitration contract affords the right to compel arbitration in the first place").

Although Morgan did not address anti-waiver provisions, we treat anti-waiver provisions as any other contractual provision. See Bridgecrest, 648 S.W.3d at 758 n.12 (citing Morgan, 142 S. Ct. at 1713) (enforcing an anti-waiver provision wherein litigating one claim in circuit court did not waive the right to arbitrate other claims). Where an anti-waiver provision is valid and enforceable, we must look to its specific terms, as the anti-waiver language remains subject to the same limitations as any general arbitration agreement. See Morgan, 142 S. Ct. at 1713 (noting that the analysis for the waiver of any contractual right focuses on the actions of the party who holds the right). Therefore, the task before us is to determine whether GMT waived its right

17

to arbitrate as provided under the Agreement to Arbitrate and the anti-waiver provisions by acting inconsistently with that right through availing itself of the judicial rules and resources of the circuit court for seventeen months prior to seeking arbitration. See id. (internal quotation omitted) ("Waiver, we have said, 'is the intentional relinquishment or abandonment of a known right.'"). We agree that GMT had the right to arbitrate the claims between itself, Lopez, and Ramos. We further recognize that the anti-waiver provision heightens GMT's protections against forfeiting its right to seek arbitration. Critical to our analysis is identifying the point at which GMT's litigation conduct becomes a waiver. Such analysis requires a fact-specific inquiry into the procedural record. See Bertocci, 530 S.W.3d at 557 (quoting Gentry, 490 S.W.3d at 788) ("Whether a party has waived its right to arbitration is determined on a case-by-case basis.").

### 1. GMT Acted Inconsistently with its Right to Arbitrate

We are persuaded that the procedural record in this case requires a finding that GMT waived its right to arbitrate and correspondingly supports the circuit court's denial of GMT's motion to compel arbitration. First, GMT knew of its right to arbitrate because it drafted the Agreement to Arbitrate, including the anti-waiver provision. Moreover, GMT included the Agreement to Arbitrate in its answer and affirmative defenses to Lopez's original petition. See Springleaf, 500 S.W.3d at 280 (citing Boulds, 300 S.W.3d at 619) (attributing knowledge of an arbitration agreement to the drafter). Second, GMT acted inconsistently with that right. See id. When GMT answered Lopez's original petition, GMT simultaneously filed a petition against Ramos, demonstrating its intent to resolve the dispute in the circuit court. GMT's petition against Ramos alleged two counts of breach of contract, including breach of the Verification Agreement for failure to indemnify GMT against Lopez's claims. GMT's claims against Ramos arise out of the same underlying transaction in which Lopez and Ramos sought to purchase a

18

vehicle from GMT. Filing a lawsuit and bringing a new party into an arbitrable action has been held to be conduct inconsistent with the right to arbitrate. See id. at 280–81 (internal citation omitted) (noting that the act of filing a lawsuit can be deemed inconsistent with the right to arbitrate); Lovelace, 442 S.W.3d at 208 (finding a party acts inconsistently with the right to arbitrate by "substantially broaden[ing] the scope of the . . . action . . . by filing counterclaims and adding parties"). We recognize, however, the presence and scope of the anti-waiver provision in the Agreement to Arbitrate. More specifically, we note that the operative anti-waiver provision provides that neither party waives its right to arbitrate "by initially agreeing to litigate a claim in court." For that reason, we are not persuaded that the initial filings by GMT, by themselves, operate as a waiver under the parties' anti-waiver provision. See Bridgecrest, 648 S.W.3d at 758 n.12

But the record before us clearly shows that, inconsistent with the express language of the anti-waiver provision, GMT did not limit its conduct to the initial filing of responsive pleadings and its petition against Ramos. Rather, after filing its answer to Lopez's petition and bringing in Ramos as a third-party defendant in August 2019, GMT committed to a course of litigation in the circuit court by engaging in over a year of motion practice and hearings. "[A] party who proceeds in a judicial forum for the resolution of an otherwise-arbitrable dispute acts inconsistently with the right to arbitrate." Millennium, 562 S.W.3d at 378 (quoting Boulds, 300 S.W.3d at 620). After August 2019, GMT actively participated in discovery. GMT moved for the circuit court to compel discovery and impose sanctions. GMT sought to quash non-party subpoenas and noticed hearings on discovery matters under Missouri Rules of Civil Procedure—rules that would be unavailable to GMT in arbitration. See Lovelace, 442 S.W.3d at 207 (citing Reis, 935 S.W.2d at 631) (noting that acts inconsistent with the right to arbitrate include

19

"duplication of efforts, use of discovery methods unavailable in arbitration, litigation of substantial issues, and postponing invoking arbitration"). GMT replied to Lopez's motion for partial summary judgment on her allegations of fraud without seeking arbitration, responding instead with suggestions in opposition on the merits of the claim, an additional statement of uncontroverted facts, and the production of employee affidavits. See id. GMT's actions are distinguishable from cases rejecting claims of waiver where there was only a short delay between the initial filings and the request for arbitration, a lack of discovery litigation, and a lack of dispositive motions. See Springleaf, 500 S.W.3d at 281. Further indicating GMT's intent to litigate the claims in the circuit court rather than pursuing its contractual right to arbitration, GMT filed its own motion for partial summary judgment on its indemnity claim against Ramos more than one year into the litigation. GMT explicitly tied its entitlement to judgment as a matter of law against Ramos to Lopez's litigation and sought to be compensated for the costs of defending against Lopez's claims. We find GMT's efforts to resolve these claims in the circuit court to be inconsistent with an intent to arbitrate. See id.; see also MFA, Inc. v. HLW Builders, Inc., 303 S.W.3d 620, 625 (Mo. App. W.D. 2010) (finding a party "undoubtedly" acted inconsistently with its right to arbitrate by filing a third-party action in the circuit court, waiting nineteen months to dismiss its action, and not notifying the defendant in the third-party action of its intent to pursue arbitration until that party had prevailed in its summary-judgment motion in one of the underlying claims); Gentry, 490 S.W.3d at 789 (finding an employer and manager acted inconsistently with their right to arbitrate an employment-discrimination claim by filing answers, issuing and replying to discovery, filing motions and briefs, and not moving to compel arbitration until over one year after filing their answer).

### 2. New Pleadings Did Not Avoid Waiver by Inconsistent Acts

20

GMT heavily leverages its argument that it did not act in a manner inconsistent with its right to arbitrate on the filing of Lopez's First Amended Petition and Ramos's Counterclaims. In particular, GMT reasons that the filing of these pleadings entitled GMT to timely move to compel arbitration when it filed its responsive pleadings, regardless of the preceding eighteen months of litigation.

When an amended petition is filed, the original is abandoned and superseded by the amended pleading "even though [the plaintiff] essentially repeated the count from her original petition in her amended petition." McDonald v. City of K.C., 285 S.W.3d 773, 774 (Mo. App. W.D. 2009). Such was the case here. Lopez, GMT, and Prestige all attested that the First Amended Petition was identical to the original petition and merely reinstated Lopez's MMPA claim against Prestige that she had voluntarily dismissed due to an alleged MMPA exemption. At the same time, Ramos sought leave to file the same claims against GMT and Prestige as did Lopez. Ramos's claims arose out of the same facts as did the claims of Lopez. Certainly, GMT was entitled to file a new answer to the First Amended Petition and answer Ramos's Counterclaims. See Leis v. Massachusetts Bonding & Ins. Co., 125 S.W.2d 906, 908 (Mo. App. 1939) (internal citations omitted) ("It is well settled that when a defendant files a demurrer to an amended petition, the answer to the original petition is thereby abandoned[;] [t]hey cannot coexist."); see also Robinson v. City of K.C., 451 S.W.3d 315, 317 (Mo. App. W.D. 2014) (indicating that the circuit court has discretion to permit new affirmative defenses to be raised when an amended petition is filed even after extensive litigation). As it did in its original answer, GMT included the Agreement to Arbitrate in its affirmative defenses to the First Amended Petition and to Ramos's Counterclaims.

21

We must first look to the precise terms of the anti-waiver provision of the Agreement to Arbitrate to consider whether the contract protects against waiver in the event new pleadings are filed. See Bridgecrest, 648 S.W.3d at 758 n.12. The relevant language in the anti-waiver provision provides:

> In addition, if a claim originally brought in a small claims court (or equivalent states [sic] court) is transferred to [sic] appealed to a higher trial court or if a new claim is asserted after the initial filing of such litigation, the Parties shall have the right to request arbitration under this Agreement.

We must give every word in the contractual provision its plain and ordinary meaning to ascertain the intent of the parties. See Greitens, 509 S.W.3d at 741 (internal citation omitted). Here, the protection against waiving the right to request arbitration when new claims are asserted is limited by the use of the word "such" within the phrase "after the initial filing of such litigation." The Missouri Supreme Court has noted that Webster's Dictionary defines "such" as an adjective used to distinguish something as either (1) "of a kind or character about to be indicated" or (2) "previously characterized or specified, aforementioned." State ex rel. Goldsworthy v. Kanatzar, 543 S.W.3d 582, 586 (Mo. banc 2018) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED 2283 (1993)). In this anti-waiver provision, "such litigation" is not followed by a word like "as" to indicate it is referring to actions about to be indicated. Rather, "such litigation" must be referring to something *previously* specified and cannot refer to *any* litigation without rendering the provision meaningless. See id.; see also Greitens, 509 S.W.3d at 743 (internal citation omitted). In this grammatical context, the previously specified litigation must be "a claim originally brought in a small claims court (or equivalent states [sic] court)[.]" See Goldsworthy, 543 S.W.3d at 586 (quoting Spradling v. SSM Health Care St. Louis, 313 S.W.3d 683, 688 (Mo. banc 2010)) (explaining that "relative and qualitative words are to be applied only to the words or phrases preceding them[,]"

22

consistent with the last antecedent doctrine). Therefore, the use of the word "such" limits the scope of this anti-waiver clause to the right to request arbitration in response to new claims only after claims were originally brought in a small claims court or equivalent state court. See id. As earlier discussed, the circuit court is not a small claims court or equivalent state court. See Section 482.305. Thus, because Lopez and GMT initially filed in the circuit court, the anti-waiver provision does not avoid waiver of the right to request arbitration due to the filing of purportedly new claims in the First Amended Petition and Ramos's Counterclaims. In this way, GMT's anti-waiver provision is narrower than and distinguishable from the anti-waiver provision applied in Bridgecrest. See Bridgecrest, 648 S.W.3d at 750 (reviewing an anti-waiver provision stating: "Even if you and we elect to litigate a Claim *in court,* you or we may elect to arbitrate any other Claim, including a new Claim *in that lawsuit or any other lawsuit.* Nothing in that litigation waives any rights in this Agreement.") (emphasis added).

Having determined that the anti-waiver provision does not reflect that the parties contracted to retain their right to arbitrate after the filing of new claims in the circuit court, we next consider GMT's contention that the filing of the First Amended Petition and Ramos's Counterclaims reset the clock as new "initial filings" such that it did not waive its right to arbitrate. GMT accurately states the general principle that the filing of the First Amended Petition rendered the original pleadings "mere 'scrap[s] of paper' insofar as the case is concerned." See McDonald, 285 S.W.3d at 774 (internal quotation omitted). Had GMT failed to preserve an affirmative defense in its original answer, then the abandonment of old pleadings in the wake of amended pleadings could be availing. See id.; see also Robinson, 451 S.W.3d at 317. However, GMT's waiver of its right to arbitrate is not predicated solely on GMT's *pleadings*. GMT timely alleged the existence of the Agreement to Arbitrate in its original

23

answer and affirmative defenses but simply chose not to use it. Rather, our analysis of waiver is predicated on GMT's *conduct* in the circuit court. Specifically, the specter of waiver depends on whether GMT's conduct reflected substantial participation in litigation to a point inconsistent with an intent to arbitrate. See Morgan, 142 S. Ct. at 1714 (noting that "[s]tripped of its prejudice requirement," the waiver test focuses on the party's conduct); see also Millennium, 562 S.W.3d at 378 (quoting Boulds, 300 S.W.3d at 620); Bull, 529 S.W.3d at 840 (internal quotation omitted).

When analyzing whether a party's substantial delay in seeking arbitration constitutes waiver, Missouri courts have recognized that a change in the circumstances of the case may justify a change in tactics. See, e.g., Bull, 529 S.W.3d at 840–41 (noting that delay in seeking arbitration *alone* does not amount to waiver and further finding that a party did not waive its right to arbitrate where the real party in interest did not become a party to the action until the filing of a second amended petition). So, we consider to what extent the filing of the First Amended Petition and Ramos's Counterclaims present a change in the litigation that reasonably could support GMT's delayed request for arbitration.

We consider significant the fact that the First Amended Petition and Ramos's Counterclaims allege the identical claims against GMT as the original petition to which GMT had precisely the same defenses, including its right to arbitrate the dispute. See id. Ramos certainly was not a new, unanticipated party to the case, given that GMT is the party who brought Ramos into the litigation as a third-party defendant by filing its petition against Ramos in August 2019, more than a year earlier. See id.; Gentry, 490 S.W.3d at 789 (rejecting two parties' argument that their right to arbitrate did not arise until after the circuit court denied their motion to exclude certain evidence because the existence of that evidence was always an issue in

24

the case and the central claim was independently arbitrable). Additionally, a key consideration under the waiver doctrine is to avoid requiring the parties "to litigate the same underlying facts before two separate tribunals," which has been held to be "antagonistic to judicial economy, the purposes of arbitration, and common sense." Millennium, 562 S.W.3d at 378–79 (citing Lewallen, 487 F.3d at 1094); Springleaf, 500 S.W.3d at 281 (noting duplication of efforts and inconsistent judgments may be indicative of waiver). Lopez's and Ramos's claims mirror one another as well as Lopez's claims in the original petition, and the claims involve the same disputed transaction. Even GMT's indemnity claim against Ramos is based upon an agreement lacking a separate arbitration provision, and potentially was subject to arbitration only because the claim arises from the same disputed transaction. Importantly, nothing in the record indicates that the filing of the First Amended Petition or Counterclaims impacted GMT's known right to seek arbitration of the dispute from the outset of the case. See Gentry, 490 S.W.3d at 789.

### 3. Summary

We agree that GMT was contractually entitled to arbitrate the dispute with Lopez and Ramos under the terms of the Agreement to Arbitrate and the anti-waiver provisions; however, we are persuaded that by litigating the case for seventeen months prior to moving to compel arbitration, GMT acted inconsistently with its right to arbitrate to the point of waiver. See Morgan, 142 S. Ct. at 1713 (internal quotation omitted); Millennium, 562 S.W.3d at 378 (quoting Boulds, 300 S.W.3d at 620). Further, the anti-waiver provisions contained within the Agreement to Arbitrate and the Retail Installment Contract do not, given the facts of this case, preclude the application of the waiver doctrine. GMT knew of its right to arbitrate from the outset of the case and waived that right by engaging in conduct far beyond initially responding to Lopez's suit by bringing in a third-party defendant as contemplated in the anti-waiver provision. GMT enlisted the circuit court as an arbiter of discovery disputes and engaged in dispositive

25

motion practice, including moving for partial summary judgment and responding to summary-judgment claims. See Millennium, 562 S.W.3d at 378 (quoting Boulds, 300 S.W.3d at 620). Under the dictates of Morgan, we are not to consider prejudice—or the lack thereof—to the parties. See Morgan, 142 S. Ct. at 1714. The record herein conclusively establishes that GMT waived its right to arbitrate by exceeding the scope of the anti-waiver provisions and manifesting its clear intent to resolve the case in the circuit court inconsistent with its right to arbitrate. See id. Our finding as to GMT is dispositive of Prestige, who joined in GMT's motion, as the arbitrability of the claims involving Prestige derive solely from GMT's Agreement to Arbitrate. Based on the foregoing, we affirm the circuit court's judgment denying GMT's motion to stay proceedings and compel arbitration. See Duncan, 607 S.W.3d at 247 (quoting Theroff, 591 S.W.3d at 436). The appeal is denied.

Conclusion

The judgment of the circuit court is affirmed.

KURT S. ODENWALD, Presiding Judge

Thomas C. Clark II, J., concurs.
Cristian M. Stevens, J., concurs.

26